**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **JASON PIASECKI,** | : | **CASE NO. 14-CV-7004** |
| **PETITIONER** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COURT OF COMMON PLEAS OF** | : | |
| **BUCKS COUNTY, ET AL.,** | : | **(CIVIL ACTION)** |
| **RESPONDENTS** | : | |


<u>**ANSWER IN OPPOSITION TO PETITION FOR HABEAS CORPUS RELIEF/
MEMORANDUM OF LAW IN SUPPORT THEREOF**</u>

**TO THE HONORABLE MARILYN HEFFLEY, UNITED STATES
MAGISTRATE JUDGE:**

The Commonwealth of Pennsylvania, Respondent, by and through its attorney,

Karen A. Diaz, Deputy District Attorney of Bucks County, respectfully answers

Petitioner's *pro se* Petition for habeas corpus relief as follows.

A seriatim response is being dispensed for clarity.

**I.    HISTORY OF THE CASE**

**A.  PROCEDURAL HISTORY**

On July 27, 2009, Petitioner was charged by the Upper Makefield, Bucks County,

Police Department with fifteen (15) counts of Sexual Abuse of Children – Dissemination

of Child Pornography, 18 Pa. C.S. §6312(c)(1), and fifteen (15) counts of Sexual Abuse

of Children – Possession of Child Pornography, 18 Pa. C.S. §6312(d)(1).

On August 13, following a preliminary hearing was held, a prima facie case was

found and all charges were held for trial in the Bucks County Court of Common Pleas.

Discoverable materials were forwarded on September 24, 2009, October 1, 2009 and December 16, 2009.

On November 9, 2009, Petitioner filed a Motion to Suppress Evidence, wherein he challenged the admissibility of Petitioner's statement to police and challenged the probable cause in the search warrant to seize Petitioner's computer.

On January 6, 2010, Petitioner filed a Motion to Dismiss Due to Commonwealth's Destruction of Exculpatory Evidence.

On January 11 and 12, 2010, a hearing was held on Petitioner's pre-trial motions before the Honorable Rea B. Boylan.  The trial court denied Petitioner's motions.

On January 12, 2010, a waiver trial began.  On January 14, 2010, the trial court found Petitioner guilty of fifteen (15) counts of Sexual Abuse of Children – Possession of Child Pornography, 18 Pa. C.S. §6312(d)(1).[1]

Sentencing was deferred for an assessment by the Sexual Offenders Assessment Board (SOAB) pursuant to 42 Pa. C.S. §9795.4(a). Following the assessment, the SOAB determined that Petitioner did not meet the criteria for a sexually violent predator.

On April 26, 2010, Petitioner was sentenced to 15 concurrent sentences of three (3) years probation.  Petitioner was originally subject to the registration requirements under Megan's Law at 42 Pa. C.S. §9795.1(a).  He is now subject to the requirements under the Sex Offender Registration and Notification Act (SORNA) at 42 Pa.C.S. §§9799.14 & 9799.15.

---

[1] At the conclusion of the Commonwealth's case-in-chief, the trial court sustained Petitioner's demurrer to the fifteen counts of 18 Pa. C.S.§6312(c)(1), Sexual Abuse of Children – Dissemination of Child Pornography.

Petitioner's direct appeal was denied by the Pennsylvania Superior Court on July 25, 2011.  The Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal on January 6, 2012.

On December 19, 2012, Petitioner filed a counseled Post Conviction Relief Act Petition pursuant to 42 Pa. C.S. §9543, *et seq*.  On January 28, 2013, the Commonwealth filed its Answer.

On March 28, 2013, Petitioner filed a supplement or amendment to his PCRA petition.

Evidentiary hearings on Petitioner's PCRA petition were held on April 4, 2013 and April 16, 2013.

By Order filed April 24, 2013, Petitioner's request for post-conviction collateral relief was denied.

Petitioner's sentence expired in its entirety on April 26, 2013, and he is no longer serving a sentence on the instant case.[2]

On May 22, 2013, Petitioner filed an appeal of Order of the PCRA court of April 24, 2013.  The Pennsylvania Superior Court dismissed Petitioner's PCRA appeal as he was no longer serving a sentence.  The Pennsylvania Supreme Court denied his Petition for Allowance of Appeal on August 19, 2014.

On December 14, 2014, Petitioner filed the instant, counseled habeas corpus petition.

This answer/memorandum now follows.

---

[2] Following completion of the instant case, Petitioner was arrested and subsequently pleaded guilty on February 6, 2014 to Defiant Trespass (M-3), Disorderly Conduct (M-3) and a summary traffic violation at Case No. CP-09-CR-0007794-2013.  Petitioner was placed on probation and is currently serving that sentence.

### B. <u>FACTUAL HISTORY</u>

In March 2009, Detective Jeff Cummins of the New Britain Township Police Department and a member of the Internet Crimes Against Children Task Force, was conducting a routine investigation regarding the downloading or accessing of child pornography over the Internet.  N.T. 1/11/10, pp. 8-12, 23-24, 26-29.  Utilizing the Gnutella Network Program, and the eP2P (Enhanced Peer to peer) law enforcement version of the Limewire program, he learned that a computer in Bucks County – later identified as Petitioner's -- had recently been accessing or downloading recognized and confirmed child pornography, and that the child pornography was offered for sharing or distribution through the Gnutella Network and the shared Limewire program.  N.T. 1/11/10, pp. 12-19; N.T. 1/12/10, pp. 708; C-1; C-2; N.T. 4/4/13, pp. 13-15, 51-52.

Detective Cummins was able to connect with Petitioner's computer as it was on line and running at the time he discovered the child pornography. N.T. 1/11/10, p. 15. Petitioner's computer provided a list of files that were currently on it and were being offered to the public for distribution throughout the Gnutella Network and Limewire. N.T. 1/11/10, pp. 15, 17; N.T. 4/4/13, pp. 13-15, 17-20, 22 , 26-27, 32-35, 39.  Fifty-nine (59) of the files offered for sharing by Petitioner's computer were confirmed child pornography titles, mostly in video format.  N.T. 1/11/10, pp. 15-16, 17; N.T. 4/4/13, pp. 35-37.  The detective downloaded 3 complete files and 1 partial video from Petitioner's computer, opened the files and confirmed that the files contained child pornography. N.T. 1/11/10, p. 18; N.T. 4/4/13, pp. 35-37.  Detective described one of the videos that he viewed downloaded from Petitioner's computer as being 2 minutes 49 seconds in length. The video depicted an adult male naked from waist down, holding a toddler – 1 to 3 years

4

old - on his lap.  The male removed the child's diaper and masturbated the child's

genitalia in view of the camera.  N.T. 1/12/10, pp. 33-34.

The detective secured a Court Order for subscriber information for that computer

and learned that it received Internet service through Comcast Cable registered to

Petitioner's mother at 110 Overbrook Avenue in Upper Makefield Township, Bucks

County.  N.T. 1/11/10, pp. 19-20, 140.  Thereafter, Detective Cummins contacted

Detective Patricia Haines of the Upper Makefield Township Police regarding the

investigation.  N.T. 1/11/10, p. 20.

On April 1, 2009, Detective Cummins, Detective Haines and two uniformed

police officers went to Petitioner's home at 110 Overbrook Avenue, where Petitioner

lives with his parents and his 8-year-old son.  The detectives had in their possession a

search warrant to seize the computers at the Piasecki residence.  N.T. 1/11/10, pp. 21, 30,

100-101, 118, 148

Detective Cummins knocked on the door on the bottom floor of the residence.

Petitioner answered the door.  He was alone in the residence with his 8-year-old son.

N.T. 1/11/10, pp. 101-102, 118-119, 121.   Detective Cummins introduced himself,

identified them as police officers, advised him that they wanted to talk to him about

computer usage in his home and asked if they could speak with him.  Petitioner invited

them into the home, and led the detectives to the second floor living room area where

Petitioner was interviewed.  N.T. 1/11/10, pp. 101, 118-120, 151.

While speaking with Petitioner, and early in the interview, Detective Cummins

advised Petitioner that he was specifically investigating the downloading of child

pornography.  N.T. 1/11/10, pp. 102, 116 -117, 124, 130, 148.  Petitioner at first stated

that he never saw, downloaded or searched for child pornography.  He later stated that he did view child pornography on his computer, saying that "maybe accidentally there was some child pornography that I downloaded on the computer." N.T. 1/11/10, p. 106.

When asked how many times he saw child pornography videos on his computer, Petitioner at first stated it was once, then stated that it was "maybe a couple" of times. By the conclusion of interview, Petitioner changed his statement entirely saying that he viewed child pornography on his computer approximately 20 to 30 times. N.T. 1/11/10, pp. 107, 133, 161-162, 169; N.T. 1/12/10, pp. 42-43. Petitioner stated that he would open the file and "if it was something I wasn't interested in, I would immediately delete it." N.T. 1/11/10, p. 107.   He then changed that to "if he would realize it was something he wasn't interested in, he would click it to the end" to see what happened.  N.T. 1/11/10, pp. 107, 132.

During the course of the interview, Petitioner described various programs that he installed on his computer, how he downloaded files, and his familiarity with file sharing. Petitioner stated that he installed LimeWire and FrostWire programs on his computer, and also used the Kazaa program to download files.  Petitioner advised police that when he downloaded files, he would use a specific keyword search to search for music or movies.  He would then receive a list of available files.  Petitioner described how he would highlight them, click download and then download the files onto his computer. The files would then be downloaded into a shared folder on his computer and then other people could get the files from him.  N.T. 1/11/10, pp. 104-106, 108, 135.

Petitioner stated that his computer was password protected but also indicated that his family knew his password.  N.T. 1/11/10, pp. 105, 128, 141-142, 156.

When asked by police as to the last time he used LimeWire, Petitioner stated "a few weeks" then changed it to "a couple of days ago."  N.T. 1/11/10, p. 108.

Petitioner also acknowledged that he previewed files that he downloaded.  He stated that downloading a file took time so he would preview files during download.  Petitioner stated that he would actually highlight the file, right click it, then select preview and the file would open up and play.   N.T. 1/11/10, pp. 106-107, 135.  He also stated that when he deleted deleting files, he would have to highlight the file and select delete.  N.T. 1/11/10, p. 108.

Detective Cummins at one point showed Petitioner a photograph still taken from a child pornography video (where the child was still fully clothed) from one of the downloads that were offered, and he had taken, from Petitioner's computer.  The video from where the still was taken depicted a girl, 8-to-10 year-of-age, performing oral sex on an adult male. N.T. 1/11/10, p. 110.  Petitioner was asked if he ever saw that image on his computer screen. Petitioner admitted he might have seen the photograph or video before.  N.T. 1/11/10, pp. 109, 130-132, 142; 1/12/10, p. 42.  Petitioner also admitted that he knew the still was taken from a child pornography file.  N.T. 1/11/10, p. 161.

At that point, Petitioner asked the officer if "can we squash or quash this?" N.T. 1/11/10, p. 110.  Petitioner asked the officer that "if there was any child pornography files on my computer and we delete them, can we just make this go away?"  N.T. 1/11/10, p. 111.

Petitioner also asked the detective if he was going to be arrested.  He stated that he did not want to lose his son.  Detective Cummins replied that he would not be arrested that day and that they were still conducting the investigation.  N.T. 1/11/10, pp. 108-109.

Approximately one hour into the interview, Petitioner's cell phone rang and Petitioner answered it without having to ask permission. N.T. 1/11/10, pp. 111-112. The caller was Petitioner's father. Petitioner advised his father that the police were there and were asking him about downloading child pornography. Petitioner's father was heard asking Petitioner, "well, did you?" Petitioner told him he hadn't. Petitioner's father was also overheard telling Petitioner to stop talking to police and that he (Petitioner's father) would be home shortly. After ending the call, Petitioner told the officers that his father did not want him speaking to them. N.T. 1/11/10, pp. 111-112, 130, 136-137, 157-159, 164-165. Petitioner, however, appeared willing to continue to speak to the detectives, as Petitioner then offered to show the detectives his computer. Detective Cummins advised him that he did not and that they had a search warrant to seize the computers. Petitioner was then shown the search warrant that the detectives had secured. N.T. 1/11/10, pp. 112-114, 137, 159, 164-165.

Thereafter, all computers, two desk top computers and a laptop, were seized from the Piasecki home. Petitioner's computer was seized from his bedroom. N.T. 1/11/10, p. 41; N.T. 1/12/10, pp. 30-31; C-1; C-2.

Prior to securing and executing the search warrant, Detective Cummins reopened the Gnutella Network and determined that the child pornography files were still active on Petitioner's computer. N.T. 1/11/10, p. 31.

The computers were subsequently turned over to the Forensic Computer Unit of the Pennsylvania Attorney General's Office for a forensic examination. N.T. 1/11/10, p. 31. Agent Brian Coleman, an expert in computer forensics, performed the examination. N.T. 1/12/10, pp. 7-8; C-1; C-2.

Found on Petitioner's computer were 93 separate "apparent" (or confirmed) child pornography videos located throughout both hard drives.  The files were contained in a shared folder under the LimeWire program.  In these videos, children between the ages of one month old to 10-years-old were shown being sexually abused through vaginal, oral or anal penetration.  N.T. 1/12/10, pp. 48-50, 53, 57, 59; C-3; C-4; 1/14/10, p. 31.

While most of the child pornography videos were found in the first hard drive, there were others listed or saved on the second hard drive within separate folders.  N.T. 1/12/10, p. 60.  There were also thousands of videos of adult pornography saved on Petitioner's computer N.T. 1/12/10, pp. 60-61.

Petitioner's computer had two hard drives and the LimeWire and FrostWire programs had been installed.  N.T. 1/11/10, pp. 54-55, 59-60; N.T. 1/12/10, pp. 48, 57-58; N.T. 1/14/10, pp. 28-31.  The LimeWire program works in connection with the Gnutella Network.  With the Gnutella Network, a program such as LimeWire is used which allows the network to share files with other computers.  The settings for Petitioner's software programs were shared.  N.T. 1/12/10, p. 52. In order to share files with other users, the program must be running.  In order to search for a particular file, a person enters a search term through LimeWire and the search is conducted through the shared Gnutella Network.  N.T. 1/11/10, pp. 49-53.

When a video, such as the child pornography found in this case, is being downloaded, the screen reflects the title of the file being downloaded.  1/12/10, p. 63.  Of the 93 child pornography videos found on Petitioner's computer, 82 of the files' titles expressly state the nature of the videos as child pornography. N.T. 1/12/10, pp. 48-49; C-3; C-4; D-4.

When each of the 93 child pornography files on Petitioner's computer was downloaded, there was a "creation" date reflected for each file, ranging from February 26, 2007 through March 30, 2009.  The creation date is the most accurate date as it demonstrates the time period when the file was created or saved to the hard drive and shows that a file actually existed on the computer.[3] N.T. 1/11/10, pp. 66, 68, 70; N.T. 1/12/10, p. 56.  The creation dates for the 93 files were not the same and varied between their creation by months, days, hours and/or seconds.  N.T. 1/12/10, pp. 48, 56, 68; C-3; C-4; D-4.

When downloading multiple files, the software programs in question reflect on the computer screen the number of files being downloaded at that time.  N.T. 1/12/10, p. 63.  As each video is being downloaded there is an option to preview it which the user selects.  The existence of preview files indicate that a video is being viewed.  N.T. 1/12/10, p. 63.  A preview file must be selected by the user for the preview file to be created.  N.T. 1/12/10, pp. 63-64.  When a file is previewed, a separate independent video and file is created of the portion being downloaded.  N.T. 1/12/10, p. 54.

The forensic evidence reflected that the child pornography files on Petitioner's computer were attempted to be previewed through LimeWire while the download was in process.  N.T. 1/12/10, p. 54.  There were a total of approximately 600 preview files of both adult and child pornography on Petitioner's computer.  They were spread out over separate and multiple days.  Some of the preview files were created as close as 10 second apart, others a minute apart, and some hours apart.  N.T. 1/14/10, p. 32.  When preview files are selected by the user at the same time, they would only be created only seconds apart.  N.T. 1/14/10, p. 33.

---

[3] The date and time reflected on Petitioner's computer was accurate.  N.T. 1/12/10, p. 47.

There were 18 preview files of child pornography identified on Petitioner's computer, 10 of which were downloaded completely, indicating that these filed were viewed. N.T. 1/12/10, pp. 54-55, 70. One of these files was one of the files shared with Detective Cummins. N.T. 1/12/10, p. 55. The dates and times that the preview files on Petitioner's computer were created vary significantly, indicating that the files were previewed at different times. N.T. 1/14/10, p. 37. The evidence found on Petitioner's computer of the dates and times of the preview files for the child pornography, which varied by days, hours and seconds, reflect that these preview files were not part of a mass download of files with any of the adult pornography found. N.T. 1/12/10, p. 70; N.T. 1/14/10, pp. 36-42, 46.

Further, a file can be deleted when previewed during download by simply right clicking the file and selecting delete. N.T. 1/12/10, p. 35. A file can also be deleted by highlighting the file on the Lime Wire (or FrostWire) screen and selecting delete or cancelling the download. N.T. 1/12/10, p. 35.

Moreover, there was no evidence of child pornography on any other computer but Petitioner's and no evidence that the other computers at the Piasecki home shared the child pornography files found on Petitioner's computer. N.T. 1/11/10, pp. 55-56, 58, 71; N.T. 1/14/10, p. 20, 29-30, 31.

## II.   <u>JURISDICTION</u>

The instant habeas corpus action must, respectfully, be dismissed as this Honorable Court has no jurisdiction to address Petitioner's claims as he is not in custody and is no longer serving a sentence in the instant case.

In order for this Honorable Court to have subject matter jurisdiction over the instant habeas corpus action, Petitioner must, as of the date of the filing of his habeas corpus petition, be "in custody" under the sentence/conviction that he challenges in his petition. *See* 28 U.S.C. §2254(a); Lackawanna County District Attorney v. Coss, 532 U.S. 394 (2001); Maleng v. Cook, 490 U.S. 488 (1989). Further, "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual "in custody" for the purposes of a habeas attack upon it." Maleng v. Cook, 490 U.S. at 492.

Petitioner challenges his conviction for the offenses of Sexual Abuse of Children – Possession of Child Pornography, 18 Pa. C.S. §6312(d)(1) on Bucks County Case No. 5364-2009. Petitioner was found guilty and was subsequently sentenced on April 26, 2010 to concurrent sentences of three (3) years probation. Petitioner's sentence was completed in its entirety on April 26, 2013.

Thus, Petitioner was no longer "in custody" on the instant case when he filed the instant habeas action on December 4, 2014. *See* 28 U.S.C. §2254(a). While Petitioner is currently serving a probationary sentence, it is a sentence being served on an unrelated criminal offenses committed after the expiration of Petitioner's sentence in the instant case. Petitioner is not challenging in this habeas action the probation sentence that he is currently serving and has not and cannot demonstrate that his prior conviction (the actual subject of this habeas petition) in any way affected his current conviction and sentence. *See* Lackawanna County District Attorney v. Coss, *supr*a. Therefore, this Honorable Court has no subject matter jurisdiction over the instant action, his claims are not cognizable, and the instant petition must, respectfully, be dismissed.

Nonetheless, Petitioner claims that he is still "in custody" in Case No. 5364-2009 "by virtue of SORNA registration requirements." *See* <u>Petition for Writ of Habeas Corpus by a Person in State Custody</u>, ¶3.  Petitioner has not and cannot provide any authority in support of this position.

To the contrary, the registration requirements to which Petitioner is subject is not "custody," as they do not constitute a criminal punishment and were not a part of his sentence, but rather are a collateral consequence of Petitioner's conviction. *See* <u>Commonwealth v. Williams</u>, 574 Pa. 487, 832 A.2d 962, 986 (2003) (held, that while certain penalties attached to the failure to register were unconstitutionally punitive, the registration, notification, and counseling provisions of Megan's Law II were non-punitive, regulatory measures supporting a legitimate governmental purpose); <u>Commonwealth v. McDonough</u>, 96 A.3d 1067 (Pa. Super. 2014) (similar to the registration requirements of Megan's Law, the registration requirements under SORNA are non-punitive and remedial measures, and are collateral to the actual sentence imposed).

"If the petitioner is not 'in custody' when he files his petition, any still-remaining collateral consequences of his conviction alone will not satisfy the jurisdictional 'in custody' requirement."  <u>Maleng v. Cook</u>, 490 U.S. at 492.  In fact, contrary to Petitioner's averment that he is still in custody, the federal courts have already determined that the registration requirements under the various states' Megan's Law do not meet the "custody" requirements to permit federal habeas corpus review.  "[E]very court of appeals to have considered whether the registration requirements imposed on sex offenders place the sex offender in custody for purposes of habeas jurisdiction has

concluded that they do not." Wilson v. Flaherty, 689 F.3d 332, 337 (4th Cir 2012). *See*
*Id.* (sex offender registration requirements of Virginia and Texas statutes do not
constitute custody); Virsnieks v. Smith, 521 F.3d 707 (7th Cir. 2008) (Wisconsin's sexual
offender registration law did not constitute "custody" for federal habeas corpus review);
Leslie v. Randle, 296 F.3d 518 (6th Cir. 2002) (convicted sex offender's challenge to
Ohio's sex offender registration law was dismissed because offender was not "in
custody" because of requirements imposed by law); McNab v. Kok, 170 F.3d 1246 (9th
Cir. 1999) (Oregon's sex offender registration requirements did not place petitioner in
custody for purposes of Section 2254); Henry v. Lungren, 164 F.3d 1240 (9th Cir. 1999)
(California's sex offender registration statute did not constitute "custody"); Williamson v.
Gregoire, 151 F.3d 1180 (9th Cir. 1998) (the requirements of the Washington registration
law did not cause a registered sex offender to be in custody for purposes of Section
2254(a)). The various District Court within this Circuit have similarly rejected the claim
that registration requirements constitute custody. *See* Mooney v. Moore, No. 11-CV-193,
2014 U.S. Dist. LEXIS 126017, *7 (E.D.PA July 18, 2014), adopted by, and Writ of
Habeas Corpus dismissed at, 2014 U.S. Dist. LEXIS 124799 (E.D.PA September 8,
2014) ("courts have universally rejected the contention that the restrictions imposed by
Megan's Law constitute 'custody' for purposes of federal habeas jurisdiction.")'
Ellington v. Crews, No. 14-CV-4118, 2014 U.S. Dist. LEXIS 88556, *7 (D. N.J. June 30,
2014) (held, "the classification, registration and community notification provisions of
New Jersey's Megan's Law are merely collateral consequences of the conviction that did
not constitute severe/immediate restraints on liberty sufficient to satisfy the "in custody"
requirement for the purposes of vesting a federal court with jurisdiction to conduct a

14

habeas review."); Diaz v. Pennsylvania, No. 12-CV-7082, 2013 U.S. Dist. LEXIS 165170, *16 (E.D. PA October 24, 2013) ("Because Megan's Law is not punitive, numerous courts in this District have held that the registration requirement does not itself constitute the 'custody' necessary to implicate federal habeas relief."); Williams v. District Attorney of Allegheny County, No. 10-353, 2010 U.S. Dist. LEXIS 115505 (W.D. Pa. October 29, 2010) (petitioner not "in custody" for the conviction at issue based on the fact that his conviction compelled him to register as a sex offender under Pennsylvania's Megan's Law); Bankoff v. Pennsylvania, No. 09-CV-2042, 2009 U.S. Dist. LEXIS 128409 **15 (E.D. Pa. February 2, 2010) ("The mere fact that [petitioner] was listed as a sex offender at the time he filed his habeas petition (and remains so listed) and that he has been sent registration documents while still incarcerated [on unrelated cases] did not render him "in custody pursuant to the judgment of a State court" as of the time he filed his petition."); Story v. Dauer, No. 08-1682, 2009 U.S. Dist. LEXIS 12176 (W.D. Pa. February 18, 2009) (finding that a challenge to the Pennsylvania Megan's law registration requirements are not cognizable in a federal habeas proceeding and that the term "in custody" does not include the requirement for registration as a sexual predator). Therefore, the continuing registration requirements under SORNA of which Petitioner is still subject do not constitute "custody" for purposes of establishing jurisdiction in this habeas corpus action.

     The Commonwealth/Respondent respectfully requests that this Court dismiss the instant habeas action as this Honorable Court has no jurisdiction to entertain his claims.

### III.    STATUTE OF LIMITATIONS

Pursuant to 28 U.S.C. §2244(d), there is a one-year period of limitation that applies to Petitioner's application for writ of habeas corpus.  The one-year period begins to run "from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> *   *   *   *
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period limitation under this subsection."

28 U.S.C. §§2244(d)(1)(A)& (2).

Petitioner's judgment of sentence in this case became final on April 5, 2012, the date by which Petitioner could have filed a petition for Writ of Certiorari to the United States Supreme Court.  28 U.S.C. §2244(d)(1)(A); 42 Pa.C.S. §9545(b)(3). Therefore, the one-year statute of limitations period began to run in April 2012.  Petitioner had to file any timely federal habeas corpus action challenging his conviction in this case by April 5, 2013.  *See* 28 U.S.C. §2244(d)(1)(A).

However, on December 19, 2012, Petitioner filed a timely counseled petition for post-conviction collateral relief pursuant to 42 Pa. C.S. §9541, *et seq*. in the Court of Common Pleas, effectively tolling the statute of limitations for the filing of a federal habeas corpus action. 28 U.S.C. §2244(d)(2).  At the time that Petitioner filed his PCRA petition, 258 days had run on the federal statute of limitations.  The PCRA court ultimately denied the first PCRA action on April 24, 2013.  On February 21, 2014, the Pennsylvania Superior Court dismissed Petitioner's appeal as moot as his sentence expired and he was no longer entitled to relief.  Petitioner's PCRA action arguably

concluded when the Pennsylvania Supreme Court denied his petition for allowance of appeal on August 19, 2014.  *See* 28 U.S.C. §2244(d)(2); Lawrence v. Florida, 549 U.S. 327 (2007); Swartz v. Meyers, 204 F.3d 417 (3d Cir. 2000).

At the conclusion of Petitioner's PCRA action, Petitioner had 107 days remaining, or until December 4, 2014 to file a timely habeas corpus action in this Honorable Court.

While Petitioner's request for relief is moot as he is no longer serving a sentence, and as this Honorable Court, therefore, lacks jurisdiction to entertain his claims, Petitioner did file the instant habeas action on the last day permitted under the statute of limitations.

## IV.    EXHAUSTION/PROCEDURAL DEFAULT

In order for Petitioner to be entitled to habeas corpus review on the merits of his claims, he must demonstrate that he has exhausted all remedies available to him through the courts of the Commonwealth of Pennsylvania.  28 U.S.C. §2254(b)(1).  A claim that has not been pursued by Petitioner in all available state court proceedings has not been exhausted.  28 U.S.C. §2254(b)-(c).  The burden is on Petitioner to prove that he has appropriately exhausted available state remedies.  *See* Lambert v. Blackwell, 134 F.3d 506 (3d Cir. 1998).  In O'Sullivan v. Boerckel, 526 U.S. 838 (1999), the United States Supreme Court held that while exhaustion does not demand that state prisoners "invoke extraordinary remedies," but rather the doctrine "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts."  *Id.*, 526 U.S. at 844-45.  The Supreme Court stated that in determining whether a state prisoner has preserved an issue for presentation in a

federal habeas corpus petition, "we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e. whether he has fairly presented his claims to the state courts." *Id*., 526 U.S. at 848.

The exhaustion rule requires that Petitioner "fairly present" his federal claims to the state courts in the first instance, in order to give those courts a meaningful opportunity to pass upon and correct alleged violations of constitutional rights. Duncan v. Henry, 513 U.S. 364, 365 (1995), *quoting* Picard v. Connor, 404 U.S. 270, 275 (1971). In order to "fairly present" his claims, a petitioner is required to "present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001), *quoting* McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). It is not sufficient that "all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982), *citing* Picard v. Connor, 404 U.S. at 277. Nor is it sufficient to make a "general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Gray v. Netherland, 518 U.S. 152, 163 (1996). The petitioner must explicitly present the federal claim to the state courts. Baldwin v. Reese, 124 S. Ct. 1347 (2004). Moreover, the petitioner has the burden of proving all facts entitling him to a discharge from custody as well as demonstrating that he has met all procedural requisites entitling him to relief. Brown v. Cuyler, 669 F.2d 155, 157 (3d Cir. 1982).

If a claim has not been fairly presented to the state courts, but further state court review is clearly foreclosed under state law, the claim will not be deemed exhausted, but

rather procedurally defaulted.  Lines v. Larkins, 208 F.3d 153 (3d Cir. 2000); Toulson v. Beyer, 987 F.2d 984, 987-88 (3d Cir.1993).  Procedural default occurs where a petitioner failed to exhaust state remedies and the state courts to which he would have been permitted to present his claims would now find such claims procedurally barred. Coleman v. Thompson, 501 U.S. 722 (1990); Whitney v. Horn, 280 F.3 240 (3d Cir. 2002); Wenger v. Frank, 266 F.3d 218 (3d Cir. 2001).  In other words, habeas claims are procedurally defaulted "when state law 'clearly foreclose[s] state court review of [the] unexhausted claims."  Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1998), *quoting* Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). *See* Caswell v. Ryan, 953 F.2d 853, 859 (3d Cir. 1992).  This rule is based upon the doctrine of "independent and adequate state grounds," and bars federal review of state court rulings when the following requirements are satisfied: 1) a petitioner has actually violated an applicable state procedural rule; 2) the procedural violation provides an "adequate" and "independent" state ground for denying petitioner's federal constitutional claim**;** 3) the highest state court to rule on the claim clearly and unambiguously relied on the procedural violation as its reason for rejection of the claim**;** and**,** 4) the state has adequately and timely asserted the default as a bar to federal habeas corpus relief.  Coleman v. Thompson, *supra*; Caswell v. Ryan, *supra.*

        In the instant case, Petitioner's Grounds 1 (claim challenging admission of Petitioner's statements made without *Miranda* warnings), 2 (sufficiency of evidence) and 3 (claim involving destruction of evidence) were raised on direct appeal and were decided by the Pennsylvania courts on the merits.  Therefore, they would apparently be exhausted had this Honorable Court jurisdiction to review them.

To the extent that Petitioner attempts in Ground 1 to raise a claim challenging the voluntariness of Petitioner's statements to police, such a claim is unexhausted. Petitioner raised a claim challenging the voluntariness of his statements to police before the trial court. However, Petitioner did not argue this claim on direct appeal, did not properly present it to the Pennsylvania Superior Court and it was not addressed by the Superior Court on its merits. It is, therefore, unexhausted and is now procedurally defaulted.

The claims set forth in Ground 4, alleging ineffective assistance of counsel for 1) failing to challenge the admissibility of Petitioner's statements at trial under *corpus delicti* rule, and, 2) for failing to seek suppression of computer evidence as a "wiretap" violation, are also unexhausted and are procedurally defaulted. While Petitioner raised the claims in Ground 4 in a timely filed PCRA action, his sentence expired prior to his filing his PCRA appeal. Under Pennsylvania law, his claims for relief became moot, and his appeal was dismissed as he was no longer entitled to relief and as the Pennsylvania courts no longer had jurisdiction to entertain his claims. *See* 42 Pa.C.S. §9543(a)(1)(i) (in order to be entitled to relief, a petitioner must be serving a sentence at the time relief is granted); Commonwealth v. Ahlborn, 548 Pa. 544, 699 A.2d 718 (1997) (petitioner is not eligible for PCRA relief after his unconditional release from his sentence, regardless of whether he was serving his sentence when he filed the petition); Commonwealth v. Williams, 977 A.2d 1174 (Pa. Super. 2009) (a PCRA court cannot afford relief from collateral consequences extending beyond the completion of a petitioner's criminal sentence); Commonwealth v. Matin, 832 A.2d 1141 (Pa. Super. 2003) (a petitioner is ineligible for PCRA relief once the sentence for the challenged conviction is completed); Commonwealth v. Fisher, 703 A.2d 714 (Pa. Super. 1997) (that the PCRA precludes

relief for those petitioners whose sentences have expired, regardless of the collateral consequences of their sentence); Commonwealth v. James, 771 A.2d 33 (Pa. Super. 2001) (as defendant was not currently serving a sentence of imprisonment, probation or parole, he was not eligible for relief, despite fact that the defendant was continuing to pay restitution and was monitored by the court for same).

Petitioner has no further remedies with which to attempt to exhaust his unexhausted claims.  A second PCRA petition would be deemed time barred and the Pennsylvania courts would, therefore, lack jurisdiction to entertain his claims.  *See* 42 Pa. C.S. §9542 (the PCRA is "the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies . . . including habeas corpus and *corum nobis*."); 42 Pa. C.S. §9545(b) (setting forth jurisdictional requirement of one-year from final judgment of sentence).  Moreover, he cannot meet the requirements of 42 Pa.C.S. §9543(a)(1)(i) as he is no longer serving his sentence; thus, the Pennsylvania courts would also not have jurisdiction for this reason.  The Pennsylvania courts have already deemed Petitioner's PCRA claims moot as his sentence is completed.

The custody requirement of §9543(a)(1)(i) is an independent and adequate state ground precluding federal habeas review, and meets the requirements for same as set forth in Coleman v. Thompson, *supra*.  Moreover, the PCRA's jurisdictional requirements have already been held to be adequate and independent state grounds precluding same.  *See* Peterson v. Brennan, 196 Fed. Appx. 135 (3d Cir. 2006) (Pennsylvania's waiver rule and jurisdictional requirements of the PCRA are adequate and independent state ground to deny habeas relief); Lines v. Larkins, 208 F.3d 153, 164-66 (3rd Cir. 2000); Williams v. Patrick, 2012 U.S. Dist. LEXIS 116273 (E.D. Pa. April

26, 2012) (the PCRA statute of limitations is an independent and adequate state rule that precludes federal habeas review), *adopted and approved by* <u>Williams v. Patrick</u>, 2012 U.S. Dist. LEXIS 116263 (E.D. Pa. August 17, 2012); <u>Ball v. Lamas</u>, 2012 U.S. Dist. LEXIS 64938 (E.D. Pa. April 18, 2012) (waiver and PCRA timeliness requirements are independent and adequate grounds barring habeas review), *adopted and approved at* 2012 U.S. Dist. LEXIS 64915 (E.D. Pa., May 9, 2012).

Petitioner also has not and cannot demonstrate the required "cause and prejudice" that would excuse his default or that a miscarriage of justice would occur if his defaulted claims were not considered. <u>Coleman v. Thompson</u>, 501 U.S. at 750. Petitioner is no longer serving a sentence on the conviction he now challenges, thus his claims are not capable of review in this habeas action.

## V. <u>MERITS</u>

Petitioner is also not entitled to relief on the merits of his claims.

### A. <u>STANDARD OF REVIEW</u>

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, a federal habeas court may not disturb a state court's resolution of the merits of a constitutional issue unless the state decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §2254(d)(1) & (2).

Petitioner is entitled to relief under the "contrary to" clause only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set

of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 407-413 (2000); *See* <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir.) (*en banc*), *cert. denied*, 120 S. Ct. 73 (1999) (to prove entitlement under "contrary to" clause, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's," but he must demonstrate "that Supreme Court precedent requires the contrary outcome").Similarly, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Rather, relief is appropriate only where the state court decision is also objectively unreasonable. *Id.* *See also* <u>Matteo</u>, 171 F.3d at 890 ("The federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.").

The United States Supreme Court set the federal standard for analyzing claims of ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1986). A <u>Strickland</u> analysis has two components – the performance prong and the prejudice prong. Petitioner is required to make a showing on both prongs or "it cannot be said that the conviction…resulted from a breakdown in the adversary process that renders the result unreliable." <u>Strickland</u>, 466 U.S. at 687.

The performance prong of the <u>Strickland</u> analysis requires a showing that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* The Court explained:

> Judicial scrutiny of counsel's performance must be highly deferential….
> A fair assessment of attorney performance requires that every effort be

made to eliminate the distorting effects of hindsight, to reconstruct the
circumstances of counsel's challenged conduct from counsel's perspective
at the time…. [T]hat is, the [petitioner] must overcome the presumption
that, under the circumstances, the challenged action "might be considered
sound trial strategy."

Strickland, 466 U.S. at 689.  Strickland therefore imposes a "highly demanding" standard

upon a petitioner to prove the "gross incompetence" of his counsel.  Kimmelman v.

Morrison, 477 U.S. 365, 382 (1986).

Strickland requires that a petitioner must meet the prejudice prong, as well,

showing that "counsel's errors were so serious as to deprive [petitioner] of a fair trial

whose result is reliable."  Strickland, 466 U.S. at 687.  In other words, a petitioner "must

show that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Id.* at 694.  Furthermore, such

determination must be made in light of "the totality of the evidence before the judge or

jury." *Id.* at 695.  Moreover, counsel cannot be deemed ineffective for failing to raise a

meritless claim. *See* Werts v. Vaughn, 228 F.3d 178 (3d Cir. 2000).

Should this Honorable Court review Petitioner's claims on their merits, Petitioner

has not and cannot establish that the decision of the Pennsylvania courts on his exhausted

claims was contrary to or involved an unreasonable application of federal constitutional

law.  Moreover, Petitioner has not and cannot meet his burden in demonstrating that the

trial and/or Superior Court erred in its findings or that he is entitled to any relief.

Additionally, Petitioner is unable to plead and prove that counsel was ineffective

in this case.

## B.  <u>GROUND ONE:  PETITIONER'S STATEMENTS TO POLICE</u>

Petitioner claims that the admission at trial of his statements to the police violated

his Fourteenth Amendment Due Process rights.  On direct appeal, Petitioner claimed that

24

the trial court erred in failing to suppress his statements made to police.  He argued,

contrary to the findings by the trial court, that he was in custody at the time that police

questioned him in his home, that he was, therefore, subject to *Miranda* warnings, and that

his statements should have been suppressed as police failed to advise him of said

warnings.

*Miranda* warnings are required only when a suspect is undergoing custodial

interrogation.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Police officers are not

required to administer *Miranda* warnings to every person they question nor are they

required to administer *Miranda* warnings simply because the questioning takes place in a

police station or because the person questioned is a suspect.  Oregon v. Mathiason, 429

U.S. 492, 495 (1977).  In determining whether a person is in "custody," and thus entitled

to *Miranda* warnings, the Court reviews the circumstances surrounding the interrogation

and, given those circumstances, determines whether a reasonable person would have felt

that he or she was not at liberty to terminate the interrogation and leave.  Thompson v.

Keohane, 516 U.S. 99, 112 (1995); Berkemer v. McCarty, 468 U.S. 420, 442 (1984).  In

making this determination, the Court examines all of the circumstances, including

whether the person's "freedom of movement was curtailed," and whether there existed

"the same inherently coercive pressures as the type of station house questioning [that

was] at issue in [the Miranda case].  Howe v. Fields, 132 S.Ct. 1181, 1189-1190 (2012).

In the instant case, the trial court properly denied Petitioner's motion to suppress

his statements to police.  As the record reflects, Petitioner was interviewed in his home,

was not in custody and no *Miranda* warnings were required.  Police advised Petitioner

that they wanted to talk to him about the use of his computer and asked if he would speak

with them.  Petitioner was advised that he did not have to speak with the police, but he

agreed to talk to them and allowed them into his home.  Petitioner was not restrained or

deprived of his freedom in any way.  No threats, promises or other coercive statements

were made by police to induce him to give a statement.  Thus, no *Miranda* warnings were

required.  *See* Opinion, Trial Court, 11/20/10, pp. 17-18.

On direct appeal, the Superior Court reviewed the record and the findings made

by the trial court as fact-finder, as well as the relevant standard under Miranda, and

properly rejected Petitioner's claim.

> Herein, the trial court found that police came to [Petitioner's]
> home, asked him if he would discuss his computer usage and, after
> [Petitioner] agreed to do so, entered his home with his permission.  The
> court also found that, during the interview, [Petitioner] was not restrained
> or coerced in any way and he took a phone call from his father.  Although
> his father told him not to talk to the police, [Petitioner] continued to do so.
> The entire interview occurred in Petitioner's home; he was not transported
> to any other location.  Based on the aforesaid findings, the court
> determined that, under the totality of the circumstances, the conditions of
> the interview were not so coercive as to constitute the functional
> equivalent of an arrest.  Accordingly, the court reasoned that *Miranda*
> warnings were not required.

> The record supports the court's aforesaid factual findings, and we
> see no legal error in the court's conclusions that the interview was not
> custodial and that *Miranda* was inapplicable.  [Petitioner] was not
> physically deprived of his freedom in any significant way and was not
> placed in a situation where it was reasonable for him to believe his
> freedom of action or movement was being restricted by the police
> questioning.  We recognize [Petitioner's] brief argues that he is of very
> limited intelligence.  Nevertheless, we find nothing in that argument
> persuading us that his limitations, whatever they might be, rendered the
> questioning by police a custodial interrogation.  In short we see no basis to
> disturb the trial court's ruling.  Thus, [Petitioner's] claim fails.

Commonwealth v. Piasecki, No. 1397 EDA 2010 (Pa. Super. 7/25/11), pp. 8-9.

The findings of fact and conclusions of law by the Pennsylvania courts are not

unreasonable and are, in fact, supported by the evidence of record. Petitioner has not and

cannot rebut the presumption of correctness afforded the state courts' findings. Moreover, the findings and conclusions of the Pennsylvania courts are not contrary to nor involved an unreasonable application of federal law. *See* 28 U.S.C. §2254(d)(1) & (2).

To the extent that Petitioner also claims that his statements to police were involuntary based on his mental impairment, such a claim, as stated above, is procedurally defaulted. It is also without merit.

Petitioner's mother testified at the suppression hearing as to her *observations* and/or *experience* with Petitioner's learning difficulties. However, she was not accepted by the trial court as an expert for purposes of any diagnosis of Petitioner's mental capacities, and there is nothing on record to demonstrate that Petitioner was intellectually incapable of giving a knowing, intelligent, and voluntary statement. In fact, the record reflects that Petitioner graduated high school, lived with his girlfriend outside of the home, had a driver's license and held a job. N.T. 1/11/10, pp. 177-178, 184-185, 190. Moreover, Petitioner was admittedly familiar with the workings and usage of his own personal computer. Therefore, any claim that Petitioner was "mentally impaired" is unsupported by the record. *See* <u>Commonwealth v. Brown</u>, 400 Pa. Super. 316, 583 A.2d 805, 811 ("The mental age and condition of [a defendant] are serious considerations, but a low IQ and limited education are not in themselves sufficient to render the confession involuntary.").

Further, there is nothing on the record that demonstrates or suggests that Petitioner was subject to manipulation, intimidation, deception, or coercion by the police. In fact, the record and facts as found by the trial court demonstrate that Petitioner's statements to police were freely given without pressure or constraint of any kind and

were not as a result of misleading statements or inducements by police. While the detectives heard, at most, that Petitioner had ADHD, Petitioner was lucid, answered questions appropriately to the subject matter and appeared to understand. N.T. 1/11/10, Pretrial Motions, pp. 124, 156 -157. There was no physical contact between the police and Petitioner. Additionally, Petitioner knew he was not being arrested that day regardless of what he said. Therefore, based on the totality of the circumstances, the record supports the trial court's finding that Appellant's statement was not coerced, but was, in fact, voluntarily given. N.T. 1/12/10, pp. 19-25.

Petitioner, respectfully, is not entitled to relief on the merits of his claim.

## C. GROUND TWO: SUFFICIENCY OF EVIDENCE

Due process requires that every fact necessary to convict a defendant of a crime be proven beyond a reasonable doubt. In re Winship, 397 U.S. 358 (1970). The standard for reviewing the sufficiency of the evidence to support a criminal conviction is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is applied "with specific reference to the substantive elements of the criminal offense as defined by state law." Id. at 324, n. 16; Orban v. Vaughn, 123 F.3d 727, 731 (3rd Cir. 1997). Moreover, circumstantial evidence may be sufficient to prove the crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 324-325.

The reviewing court may not re-weigh the evidence or make credibility findings as "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S. Ct. 2, 4 (2011).

Even with conflicting evidence, a federal court must presume that the jury resolved any conflicts in favor of the Commonwealth and must defer to that resolution.  *Id*. at 6. Further, the state court's decision finding that the evidence was sufficient to support the conviction cannot be overturned in a federal habeas action unless the state court's decision was "objectively unreasonable."*Id*. at 4.

To sustain a conviction for Sexual Abuse of Children – Possessing Child Pornography under the statute that existed at the time of the offenses, the Commonwealth was required to prove the following elements: that "[a]ny person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act is guilty of a felony of the third degree." 18 Pa. C.S. §9312(d)(1) (effective January 19, 2003). A "prohibited sexual act" was defined as "sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." 18 Pa. C.S. §9312(a) (deleted and replaced by §9312(g) - Definitions by P.L. 63, No. 15, § 1, effective September 14, 2009).  *See* Commonwealth v. Koehler, 914 A.2d 427, 436 (Pa. Super. 2006) ("the Commonwealth must prove the following three (3) elements beyond a reasonable doubt in order to convict an individual of this offense: there must be a depiction of an actual child engaged in a prohibited sexual act or a simulated sexual act; the child depicted must be under the age of eighteen (18); and the defendant must have knowingly possessed or controlled the depiction.").

29

The trial court, as fact-finder, rejected Petitioner's claim challenging the sufficiency of the evidence in this case.

> Here, the record reflects that the verdict is supported by more than sufficient evidence. [Petitioner's] statements show an understanding of how the pornography would be accessed and by his knowledge that he possessed it. During the interview with police [Petitioner] stated that he knew how to download files from LimeWire, FrostWire and Kazaa. [Petitioner] explained that you use keyword searches and then highlight the file that you wish to download. [Petitioner] initially told police that he had never seen or searched for child pornography. However, [Petitioner] then admitted that he may have accidentally downloaded child pornography on a prior occasion, but would have deleted it immediately. Thereafter, [Petitioner] acknowledged that he had seen child pornography approximately twenty to thirty times. [Petitioner] then asked the police, if he deleted any files he had on his computer would they "make this go away?"

> Further, [Petitioner's] argument that the files were part of a massive download of adult pornographic material is also unsupported as evidenced by the explicit and graphic nature of the titles of each file that [Petitioner] highlighted before it was downloaded. [Petitioner's] argument is also unsupported as Agent Coleman opined and testified about the fact that ten of the eighteen preview files were subsequently downloaded to completion and that the file creation dates varied by months, days, minutes, and seconds.

> The Commonwealth presented more than sufficient testimony and evidence to support the verdict.

Opinion, Trial Court, 1/20/10, pp. 19-20. *See* Commonwealth v. Diodoro, 932 A.2d 172 (Pa. Super. 2007) (defendant's actions of operating the computer mouse, locating the sites, opening the sites, displaying the images on his screen, and then closing the sites, testimony that someone had to click the "next" button to view successive images, and defendant's ability to download the images, print them, copy them, and/or e-mail them corroborated his intent to exercise control over the pornography).

The Superior Court, in turn, reviewed the record and properly rejected Petitioner's arguments as follows.

In his sufficiency claim, [Petitioner] does not contest the fact that there was child pornography on his computer.  Rather, he contends the Commonwealth did not prove he knowingly possessed the pornography. [. . .]  The context of [Petitioner's] sufficiency contention is that thousands of video files, perhaps over four thousand, were found on his computer. Ninety-three contained child pornography and the rest, apparently, consisted of adult videos.  The evidence showed that many videos could have come to be in [Petitioner's] computer during mass downloads of pornography.  [Petitioner's] point is that the child pornography could have been accidentally swept into his computer as he was downloading adult videos.  As such, he maintains, the evidence did not demonstrate knowing possession of the material involving children.

The Commonwealth presented evidence showing that there were preview files associated with the child pornography.  The significance of there being preview files is that such files tend to demonstrate that someone viewed the videos, or at least viewed some part of them, while they were being downloaded.  However, [Petitioner] argues the evidence also showed that multiple preview files can be created simultaneously, wit one video )perhaps an adult one) being viewed on the screen while others (perhaps child videos) do not appear.  On this point, the Commonwealth offered evidence tending to show that the preview files associated wit the child pornography were likely created not at the same times as several of the adult preview files but, instead, hours or minutes apart from thiose adult preview files.  Evidence of the disparate times was intended to refute the notion that the child preview files were created unknowingly by [Petitioner] while he was previewing adult videos.

[Petitioner] then argues the Commonwealth may have proven that the preview files for the child pornography were created at times significantly different from some of the adult files, but the Commonwealth did not offer such proof with respect to all of the several thousand adult videos.  It appears [Petitioner] is correct that the police did not compare the creation times of all the preview files.

When [Petitioner] was interviewed by police, he initially told them he never saw or downloaded child pornography.  He then claimed he may have downloaded it accidentally but had deleted it as soon as he saw what it was.  At one point, he told police he had seen child pornography once. Thereafter, he said that he may have done so a couple of times. Eventually, he indicated he had seen child pornography twenty or thirty times.  While first claiming he immediately deleted any child pornography that he saw, he later told police that he would "click" to the end of such videos.  N,T,, 01/11/10, at 107.

An officer showed [Petitioner] a picture of a prepubescent girl who evidently appeared in one of the videos.  [Petitioner] indicated he might have seen her image on the computer screen at some point.  Also during the interview, [Petitioner] asked if he would be arrested and, further, inquired as to whether "we can just make this go away" if any child videos were found on his computer and were then deleted.  *Id.*  at 111.
In view of [Petitioner's] statements, including the conflicts therein, the fact that the child pornography was found on his computer, and the existence of the preview files, we cannot say that the evidence was so weak and inconclusive that no probability of guilt could arise therefrom.
In reaching this conclusion, we stress that we are viewing the evidence in the light most favorable to the Commonwealth, as we must do on sufficiency reviews.  [Petitioner's] sufficiency claim therefore fails.

Commonwealth v. Piasecki, No. 1397 EDA 2010 (Pa. Super. 7/25/11), pp. 2-4.

The record in this case reflects that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to reasonably and objectively find that Petitioner was guilty of knowingly possessing child pornography.  Moreover, the trial court and Superior Court's findings and conclusions here were not contrary to or involved an unreasonable application of clearly established federal law or the sufficiency of evidence standard.  *See* 28 U.S.C. §2254(d)(1) & (2).

To the extent that Petitioner attempts to argue (or re-argue) the credibility and weight of the evidence (in a light favorable to him), he cannot do so.  A weight of the evidence claim is not cognizable in a federal habeas corpus action.  Tibbs v. Florida, 457 U.S. 31 (1982).  Moreover, based on the evidence as set forth above, the weight of the evidence supported the trial court's verdict in this case.

D.  **GROUND THREE:  ALLEGED DESTRUCTION OF EXCULPATORY EVIDENCE**

Next, Petitioner claims that his due process rights were violated by the police improperly securing his computers, and thereby, losing or preserving alleged exculpatory evidence.  Petitioner specifically argues to the Superior Court that the action of Detective

Cummins in unplugging the computers and equipment when seizing them pursuant to search warrant resulted in the loss of search history information which he claims would have been exculpatory.  Petitioner claimed that the remedy for this "misconduct" was dismissal of all charges.

Due process requires defendants be provided certain access to certain kinds of evidence prior to trial, so they may be afforded a meaningful opportunity to present a complete defense.  Arizona v. Youngblood, 488 U.S. 51 (1988); Commonwealth v. Snyder, 599 Pa. 656, 963 A.2d 396 (2009).  The guarantee of access to evidence underlies the requirements that the prosecution turns over, if requested, any evidence which is exculpatory and material to guilt or punishment and turn over exculpatory evidence which might raise a reasonable doubt as to guilt even if the defense fails to request it.  *Id*.  However, the prosecutor's duty to preserve evidence is triggered only where the evidence has clear exculpatory value, and it is of such a nature that the defendant could not obtain "comparable evidence" by reasonably available means. *Id*.; Illinois v. Fisher, 540 U.S. 544 (2004).  An "allegation that destroyed evidence was exculpatory . . . cannot be based on a 'mere assertion.'" Commonwealth v. Snyder, 963 A.2d at 405.  Absent a showing of bad faith on the part of law enforcement, the Commonwealth's failure to preserve evidence which is "merely potentially useful" to a defendant - because any benefit to him is purely hypothetical - does not violate due process. Illinois v. Fisher, *supra*; Arizona v. Youngblood, *supra*.

In the instant case, the trial court properly denied Petitioner's motion to dismiss the charges based on his allegation of prosecutorial misconduct for destroying potentially exculpatory evidence.  As demonstrated by the record, and as found by the trial court, no

dismissal was warranted as any "potential" evidence that was now unavailable based on the manner in which the police seized Petitioner's computer was not intentional or based on any act of bad faith.  Moreover, other than bald claims, Petitioner failed to establish that there was any actual exculpatory evidence lost or destroyed by the Commonwealth, or any exculpatory evidence that would have in any way affected the verdict.  *See* Opinion, Trial Court, 11/29/10, pp. 15-16.

The Superior Court, in reviewing the record and the findings by the trial court, properly rejected Petitioner's due process claim

> [Petitioner's] second issue is whether the court should have dismissed the charges against him because, by unplugging his computer without first shutting it down and/or performing certain operations on it, police lost or destroyed some or all of his Internet search terms.   His point is that the search terms could have corroborated a statement made to police in which he said that he had never searched for child pornography on the Internet.  He argues that, because he made this statement before the seizure of his computer, it was incumbent on police to preserve the search terms before unplugging the computer and that their failure to do so constituted a due process violation warranting dismissal of the prosecution.  He acknowledges there is no evidence that police intended to destroy evidence.

> In this case, the evidence in question was potentially useful to [Petitioner] if the search had been preserved, they may or may not have revealed whether [Petitioner] had searched for child pornography and, if they revealed he had not conducted such searches, that particular revelation may or may not have affected the factfinder's ultimate determination of whether [Petitioner] knowingly possessed the child pornography that was, in fact, on his computer.  Given the potential nature of the evidence, [Petitioner] was required to show the Commonwealth, through the police, acted in bad faith.  The trial court found the police did not act in bad faith.  For the reasons that follow, [Petitioner] has not persuaded us the trial court erred.

> Testimony from a detective involved in seizing the computer and testimony from an agent of the Pennsylvania Attorney General's Office

indicated police are generally trained that unplugging a computer without shutting it down and without performing any operations thereon is usually the best way to preserve the optimal amount of computer information for investigative purposes.  The detective in question was trained in this manner.  Apparently, his training came from the U.S. Department of Justice.

The suppression evidence indicated there are steps one can take before unplugging a computer that would preserve the type of information that seems to have been lost in this case, but the particular detective who seized the instant computer did not have the specialized training to do so.  Evidence also suggested that most police, likewise, do not receive such training, although a limited number of officers may have such heightened expertise.  Testimony further indicated that shutting down the computer or otherwise attempting various operations on it could have resulted in an increased loss of data when compared to unplugging the machine.

Taking note of the foregoing facts, the court concluded the police in this case did not act in bad faith.  The seizure protocol used in this case was, by design, intended to preserve an optimal amount of investigative data.  The detective acted in light of the potential hazards of shutting down the computer and of attempting other operations thereon, and in light of there being a limited number of officers who might have had more sophisticated training relative to the preservation of computer data.  In reaching its conclusion that the police had no bad faith, the court also observed that all evidence available for analysis by the Commonwealth was also available to the defense.  This is not a case where the Commonwealth analyzed the search terms and then destroyed them; neither the Commonwealth nor [Petitioner] made use of the search terms.

Having reviewed the record and the trial court's opinion, we are unconvinced the court's aforementioned decision was based on bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of the law.  Seeing no abuse of discretion, we will not disturb the court's order.

Commonwealth v. Piasecki, No. 1397 EDA 2010 (Pa. Super. 7/25/11), pp. 5-7.

The findings of fact and conclusions of law by the Pennsylvania courts are not unreasonable, nor are they contrary to or involve an unreasonable application of federal law.  *See* 28 U.S.C. §2254(d)(1) & (2).

### E.  GROUND FOUR: INEFFECTIVE ASSISTANCE OF COUNSEL.

As stated above, Petitioner's claims of ineffective assistance of counsel set forth in Ground 4 are procedurally defaulted.  They are also without merit.

#### 1.  CORPUS DELECTI

First, Petitioner claims that trial counsel was ineffective for failing to object to the admission of his statements based on the *corpus delecti* rule.

The *corpus delicti* rule is a rule of evidence. It places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted.  Commonwealth v. Rivera, 828 A.2d 1094 (Pa. Super. 2003).  It does not require the Commonwealth to prove the existence of a crime be proved beyond a reasonable doubt prior to admission of the confession.  Rather, it is satisfied where independent evidence, beyond the statement of the defendant, suggests that a crime has occurred.  Commonwealth v. Persichini, 444 Pa. Super. 110, 663 A.2d 699 (1995), *affirmed*, 558 Pa. 449, 737 A.2d 1208 (1999).  The Commonwealth need not establish preliminarily and independently all elements of the charge.  *Id*.  The Commonwealth need only establish the *corpus delecti* by a preponderance of the evidence.  Commonwealth v. Hernandez, 39 A.3d 406 (2012). Moreover, for a statement of a defendant to be admitted, the evidence introduced need only be more consistent with a crime than with an accident.  Commonwealth v. McMullin, 745 A.2d 683 (Pa. Super. 2000).   The *corpus delecti* rule can be also established through circumstantial evidence.  Commonwealth v. Bullock, 868 A.2d 516 (Pa. Super. 2005).  Further, proving the criminal responsibility of a particular defendant is not part of the required *corpus delecti*.  Commonwealth v. Bullock, *supra*.  The criminal responsibility of the accused on trial (or any particular, identifiable person) for

the loss or injury is not a component of the *corpus delecti* rule, and may, in fact, be proven by the confession itself. *Id*. Finally, whether a defendant's statement is admitted before or after the establishment of the *corpus delicti* is within the discretion of the trial judge. Commonwealth v. Smallwood, 497 Pa. 476, 442 A.2d 222 (1982).

As stated previously, the offense of Sexual Abuse of Children - Possession Of Child Pornography at 18 Pa. C.S.A. §6312 (d) prohibits any person from knowingly possessing or controlling any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act. 18 Pa. C.S.A. §6312(d)(1); Commonwealth v. Diodoro, 932 A.2d 172 (Pa. Super. 2007), *affirmed* 601 Pa. 6, 970 A.2d 1100 (2009). Accessing and viewing child pornography over the internet constitutes possession or control over such pornography. *Id*.; Commonwealth v. Koehler, 914 A.2d 427 (Pa. Super. 2006).

As the record reflects, the evidence introduced at Petitioner's trial clearly established the *corpus delecti* for the crime of Sexual Abuse of Children – Possession of Child Pornography. Evidence was introduced that the computer that was seized by police and analyzed by the Attorney General's Office, contained 93 separate "apparent" (or confirmed) child pornography videos located throughout both hard drives on the computer, downloaded from February 26, 2007 through March 30, 2009. In these videos, children between the ages of one month old to 10-years-old were shown being sexually abused through vaginal, oral or anal penetration. N.T. 1/12/10, pp. 48-50, 53, 57, 59; C-3; C-4; 1/14/10, p. 31. Of these files, there were 18 preview files of child pornography identified, 10 of which were downloaded completely, indicating that these filed were

viewed by the user.  N.T. 1/12/10, pp. 54-55, 70.  The dates and times that the preview

files on the computer were created vary significantly, indicating that the files were

previewed (viewed) at different times.  N.T. 1/14/10, p. 37.  Moreover, the dates and

times of the preview files for the child pornography, which varied by days, hours and

seconds, reflect that these preview files were not part of a mass download of files with

any of the adult pornography also found on the same computer. N.T. 1/12/10, p. 70; N.T.

1/14/10, pp. 36-42, 46.  *See* Commonwealth v. Piasecki, No. 1397 EDA 2010 (Pa. Super.

7/25/11); Opinion, Trial Court, 11/29/10, pp. 6-13 (outlining the extent of the child

pornography found on computer).

 The fact that the computer contained a voluminous number of child pornography,

that the child pornography was downloaded at various times over a considerable period

of time, and that a number of the videos were previewed (viewed) on separate dates and

times while being downloaded all establish that ***someone*** accessed and viewed child

pornography, thus clearly establishing the *corpus delecti* of the crime in question. 18 Pa.

C.S.A. §6312(d)(1); Commonwealth v. Koehler, *supra*.

 Moreover, prior to the seizure and analysis of the computer, both Detective

Haines and Detective Cummins testified and described child pornography on the

computer in question that they were able to access through the Limewire and Gnutella

programs.  N.T. 1/11/10, pp. 12-19; N.T. 1/12/10, pp. 32-34, 708; C-1; C-2.

 Further, the evidence at trial – separate and apart from Petitioner's statements --

established that the computer containing child pornography was possessed by Petitioner,

even though such a connection is not required to establish a *corpus delecti*.  The

computer in question was registered to Petitioner's mother, however, it was kept in

Petitioner's bedroom.  Additionally, no other computer in the Piasecki household had child pornography.  N.T. 1/11/10, pp. 55-56, 58, 71; N.T. 1/14/10, pp. 20, 29-30, 31.

After the suppression hearing, Petitioner then proceeded to a bench trial and agreed to incorporate by reference the evidence from the suppression hearing already ruled admissible by this Court.  N.T. 1/12/10, pp. 29-30. Therefore, the need for the Commonwealth to establish a *corpus delecti* in any particular order was rendered moot.

Also, at trial, counsel stipulated and conceded that the "apparent" child pornography found on the computer Petitioner's computer was, in fact, child pornography for purposes of that element of the statute. N.T. 1/12/10, p. 57; C-3. Counsel's decision to acknowledge and stipulate to same was clearly reasonable based on the evidence presented (and found) by the trial court.  In light of the voluminous evidence of child pornography of Petitioner's computer, the defense at trial was that Petitioner did not knowingly possess the child pornography, but rather accidentally obtained it when downloading adult pornography.

After the suppression hearing, Petitioner then proceeded to a bench trial and agreed to incorporate by reference the evidence from the suppression hearing already ruled admissible by this Court.  N.T. 1/12/10, pp. 29-30. Therefore, the need for the Commonwealth to establish a *corpus delecti* in any particular order was rendered moot.

To the extent that Petitioner would argue that counsel should not have agreed to stipulate and incorporate the suppression testimony for purposes of trial, such a claim is meritless.  First, part of the testimony that was incorporated from suppression was that of Detective Cummins testimony which described, in part, the child pornography accessed from the computer in question; thus, establishing the necessary *corpus delecti*.  Second, as there was more than sufficient evidence introduced establishing a *corpus delecti* that existed in this case, Petitioner can in no way establish prejudice.  *See* Strickland v. Washington, 466 U.S. at 694.  Had counsel objected or not agreed to incorporate the suppression testimony, at most, the result would have been for the Commonwealth to first

introduce the evidence of child pornography at trial, then Petitioner's statements.  Third, whether Petitioner's statements were admitted before or after the corpus was established was within the discretion of the trial court.  Commonwealth v. Smallwood, *supra*.  Finally, any claim of ineffective assistance of counsel for stipulating and incorporating the suppression testimony was never before raised by Petitioner, was not properly before the PCRA court and would now be procedurally defaulted.  *See* Argument IV, Exhaustion/Procedural Default, *supra*.

The record reflects that a sufficient *corpus delicti* was established in this case.  Thus, counsel cannot be deemed ineffective for failing to raise or pursue a meritless claim.  Werts v. Vaughn, *sup*ra.

## 2.  WIRETAP CLAIM

In his PCRA action, Petitioner claimed that trial counsel was ineffective for failing to challenge the "search" of Petitioner's computer as a violation of Pennsylvania's Wiretapping and Electronic Surveillance Act, 18 Pa. C.S. §5701, *et seq*.  However, the record reflects that there was no wire or "interception" and that the Wiretap Act was in no way implicated.

In the instant case, Detective Cummins was a member of the Internet Crimes Against Children Task Force.  He conducted a routine investigation regarding the downloading or accessing of child pornography over the Internet.  N.T. 1/11/10, pp. 8-12, 23-24, 26-29.  He utilized the Gnutella Network Program and the eP2P law enforcement version of the Limewire program to do so and discovered that Petitioner's computer had recently been accessing or downloading recognized and confirmed child pornography, and that the child pornography was offered for sharing or distribution through the

Gnutella Network and Limewire.  N.T. 1/11/10, pp. 12-19; N.T. 1/12/10, pp. 708; C-1; C-2; N.T. 4/4/13, pp. 13-15, 51-52.

Detective Cummins testified that he was able to connect with Petitioner's computer as it was on line and running at the time he discovered the child pornography. N.T. 1/11/10, p. 15.  Petitioner's computer provided a list of files that were currently on it and were being offered **to the public** for distribution throughout the Gnutella Network and Limewire.  N.T. 1/11/10, pp. 15, 17; N.T. 4/4/13, pp. 13-15, 17-20, 22 , 26-27, 32-35, 39.  Fifty-nine (59) of the files offered for sharing by Petitioner's computer were confirmed child pornography titles, mostly in video format.  N.T. 1/11/10, pp. 15-16, 17; N.T. 4/4/13, pp. 35-37.  The detective downloaded 3 complete files and 1 partial video from Petitioner's computer, opened the files and confirmed that the files contained child pornography.   N.T. 1/11/10, p. 18.  The detective described in his testimony one of the videos that he viewed downloaded from the computer as being 2 minutes 49 seconds in length. The video depicted an adult male naked from waist down, holding a toddler – 1 to 3 years old - on his lap.  The male removed the child's diaper and masturbated the child's genitalia in view of the camera.  N.T. 1/12/10, pp. 33-34.

Further, Agent Coleman, an expert in computer forensics, described the Gnutella Network, and the use of the Livewire program, as similar to a library where computers speak with each other and share files.  The operator of the computer, through Limewire, would choose what files to share with other persons who have also downloaded the Livewire program N.T. 1/11/10, pp. 49-55.

The detective subsequently secured a Court Order for subscriber information for that computer which eventually led to Petitioner.  N.T. 1/11/10, pp. 19-20, 140.  He then

obtained a search warrant for Petitioner's computer which the trial court had already determined was supported by sufficient probable cause.  N.T. 1/11/10, pp. 98-99.

Petitioner had raised a similar challenge pre-trial, alleging that the search warrant obtained by police for search of the computer "was based upon the Police's electronic intrusion into Mr. Piasecki's computer, securing information without any permission or any other lawful right to do so."  *See* Motion to Suppress Evidence, filed 11/2/09, ¶ 4(a); N.T. 1/11/10, pp. 2-99.  The trial court rejected this claim, finding that there was no unlawful search of Petitioner's computer.   N.T. 1/11/10, pp. 98-99.  The Court specifically found that "the pornographic material obtained [from Petitioner's computer] could only have been downloaded by Detective Cummins because its operator [Petitioner] agreed to share this information through Limewire."  N.T. 1/11/10, pp. 98-99.

Here, the accessing and downloading of the child pornography from Petitioner's computer was not an interception within the meaning of Pennsylvania's Wiretap Act. Commonwealth v. Proetto, 771 A.2d 823 (Pa. Super. 2001), affirmed by 575 Pa. 511, 837 A.2d 1163 (2003).  Because Petitioner offered to share the child pornography files through the Limewire program to other members of the public who also downloaded the Limewire Program, the files were in fact received by the "intended" recipient, Detective Cummins.  *See Id*.  Therefore, such communication (or sharing) falls within the mutual consent exception found at 18 Pa. C.S. §5704, does not constitute an "interception," and does not violate the Act.  *Id*.  By the very act of sending a communication (or file) over the Internet, the party expressly consents to the recording of the message. Commonwealth v. Crittenden, 619 Pa. 123, 58 A.3d 95 (2012).  A party knows that by the nature of sending (or sharing) the communication, a record of the communication,

including the substance of the communication, is made and can be downloaded, printed, saved, or, in some cases, if not deleted by the receiver, will remain on the receiver's system. *Id.* Thus, the act of sending a communication (or sharing information) via the Internet, the party expressly consents by his conduct to the access, downloading and/or recording of the message by others. *Id.*

Additionally, the files accessed and downloaded by Detective Cummins from Petitioner's computer did not constitute a "contemporaneous communication" from Petitioner, but rather involved files already downloaded and saved on Petitioner's computer which were being offered for sharing – at the recipient's own time and choosing -- and, thus, was not an "interception" within the meaning of the Act. 18 Pa. C.S.A. §5702; Commonwealth v. Proetta, *supra*.

Petitioner argued to the PCRA court that Detective Cummins' use of the eP2P version of the Limewire Program was an illegal pen register and trap and trace, as well as an unlawful interception, in violation of the Wiretap Act. However, Petitioner failed to present any evidence or prove in any way that the eP2P program used by Detective Cummins was an "interception," was an unlawful intrusion into Petitioner's computer, altered any information contained on Petitioner's computer, or was in any way an illegal wiretap. His "expert, " Joseph Henderson, called at the PCRA evidentiary hearing, never used eP2P and offered no explanation as to how it functioned. Petitioner's bald claims of illegal wiretap were not based on any evidence of record and were pure speculation without any factual or legal support. His bald, self-serving and conclusory allegations cannot entitle him to relief. *See* Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d. Cir.

1991) (vague and conclusory allegations of ineffective assistance of counsel do not satisfy a petitioner's burden).

At most, through his expert, Mr. Henderson, Petitioner may have established that it was *intended* that certain of Petitioner's files were not to be shared through Limewire. However, any subjective intent on the part of Petitioner's or his agents was irrelevant. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all of the surrounding circumstances. Commonwealth v. Caban, 60 A.3d 120 (Pa. Super. 2012). Here, the record establishes that the files on Petitioner's computer that were viewed by the detective using the eP2P program were, in fact, offered for sharing through Limewire, whether he intended them to be or not. As they were offered for sharing to the public, there was no unlawful "search" by the detective.

It is important to note that Limewire is intended as a file sharing program. As demonstrated by Detective Cummins at the April 4, 2013 PCRA evidentiary hearing, a file simply set and marked "not to be shared" does not stop the Limewire program from sharing those files. *See* N.T. 4/4/13, Part 2, pp. 4-26; CPCRA-2. In fact, Petitioner's expert acknowledged that a complaint surrounding the Limewire Version 4 (which Petitioner had on his computer) was that files that were intended not to be shared were accidentally shared by the user. *See* N.T. 4/4/13, pp. 157-158.

Further, it was Petitioner's sole burden to prove his claims of ineffectiveness. While the Commonwealth *may* introduce evidence to rebut Petitioner's evidence, the Commonwealth bears no burden to disprove Petitioner's claims. *See* Commonwealth v. Colavita, 606 Pa. 1, 993 A.2d 874 (2010). Detective Cummins' testimony about his test

using the two investigative computers to explain how Limewire operates was elicited

after Petitioner had already rested.  The import of this testimony was to demonstrate, as

an example, that files that were downloaded from Limewire that were intended to "not be

shared" to the public were in fact shared when located in Limewire's saved folders.  *See*

N.T. 4/4/13, Part 2, pp. 4-26; CPCRA-2.

In contrast, the testimony of Petitioner's "expert" was based solely on his own

reading of the Limewire.props file printout that Agent Coleman attached to his written

report of his forensic analysis of Petitioner's computer.  *See* D-4; Computer Forensic

Analysis, Attachment #5, Limewire.props Report.  However, contrary to Mr.

Henderson's testimony, Agent Coleman, who actually conducted the forensic

examination of Petitioner's computer and testified to the location of the child

pornography files, testified at trial that in his review of Petitioner's computer the files in

question were, in fact, "shared."  *See* N.T. 1/12/10, pp. 48-50, 53, 57, 59; C-3; C-4;

1/14/10, p. 31.  Additionally, in his written report, Agent Coleman actually attached the

Limewire.props file (upon which Petitioner's expert so heavily relied) to support his

conclusions.  He stated that "[m]ost of the apparent pornography videos and notable

videos were found in the shared folders designated in the limewire.props file," and

highlighted in the Limewire.props file (the file upon which Petitioner's expert relied) the

relevant areas of that file, including: "LAST _ FILECHOOSER _ DIR=C\ : \ \

Documents and Settings\ \ Jason\ \ My documents\ \ Limewire\ \ Saved", "DIRECTORY

_FOR_ SAVING_ FILES=C\ : \ \ Documents and Settings\ \ Jason\ \ My documents\ \

Limewire\ \ Saved",  and "DIRECTORY_ FOR_ SAVING_ LWS_ FILES = C\:\ \

Documents and Settings\ \ Jason\ \ My Documents\ \ Limewire\ \ Store Purchased".  *See*

D-4; Computer Forensic Analysis, Summary Report, p.2 & Attachment #5,

Limewire.props Report.

In addition, Petitioner's allegation that the use of the eP2P constituted a pen register or trap and trace fails on its face. By their own definition, each involves the interception or capturing of the act of a live conversation or communication between two non-consenting parties. *See* 18 Pa. C.S.A. §5702, Definitions. Here, there was no capturing of any act of communication between Petitioner and another party. The direct parties involved were Petitioner and the detective.

Petitioner's allegation that the detective's use of eP2P constituted an interception of live communication also fails on its face. First, as stated previously, an "interception" involves the capturing of live, contemporaneous communications between two non-consenting parties. Here, Detective Cummins was a direct party when accessing Petitioner's shared files – there was no third party involved. Commonwealth v. Proetto, *supra*. Second, the information viewed and accessed by the detective was not live communications, but rather saved files being offered through the Limewire Program for sharing. Commonwealth v. Proetto, *supra*.

Also, consent is an exception to any wiretap violation alleged here. *See* 18 Pa.C.S. §§ 5704(4) & 5771(b)(3). The offering to the public by Petitioner of his shared files through the Limewire program, whether personally intended or not, constitutes consent, and therefore, does not implicate the Wiretap statute. *See* Commonwealth v. Caban, *supra*; Commonwealth v. Proetto, *supra* (by the very act of sending a communication over the Internet, the party expressly consents to the recording of the message).

46

As Detective Cummins described, the eP2P Limewire program that he used merely permitted him access to files that were being offered through the Limewire as shared.  The information that he was able to view regarding ISP address, port number, etc. from Petitioner's computer was all information readily available to the public.  There was no "eavesdropping" on any information that was not already being offered to the public.  *See* N.T. 4/4/13, pp. 13-15, 22-27, 32-37, 39, 52-68.

Petitioner has not and cannot identify any authority to support his claim that the use of the eP2P version of the Limewire program, or any like "enhanced" investigative tools used by law enforcement, constitutes a wiretap violation or unlawful search.  To the contrary, various courts have rejected  arguments similar to Petitioner's: United States v. Stults, 575 F.3d 834, 843 (8th Cir. 2009) (no reasonable expectation of privacy in files accessed through a defendant's installation and use of Limewire as the fact that the defendant installed and used a file sharing program "open[ed] up his download file to the world, including [police]."); United States v. Brashear, 2013 U.S. Dist. LEXIS 163865 (M.D. Pa. 11/18/13) (agent's use of Roundup program to access child pornography files on a defendant's computer, shared through  the Gnutella network, did not violate the defendant's Fourth Amendment rights as there is no reasonable expectation of privacy in files made available to the public through peer-to-peer file sharing programs); State v. Dunham, 2012 La. App. LEXIS 1743 (La. App. 1 Cir. 12/21/12) (a defendant has no Fourth Amendment privacy rights in computer files that they have shared on file sharing networks; even where the investigating law enforcement officer uses software specially modified to screen for child pornography, provided that the software has no greater access to the defendants' computer files than that available to any other client); United

States v. Gabel, 2010 U.S. Dist. LEXIS 107131, 2010 WL 3927697 (U.S.S.D. Fla. 9/16/10), *adopted by* United States v. Gabel, 2010 U.S. Dist. LEXIS 107129 (S.D. Fla. Oct. 4, 2010) (Fourth Amendment not implicated where law enforcements' enhanced programs, that enable them to screen for child pornography and collect data for evidentiary purposes, merely permit law enforcement to more easily organize and classify information otherwise available to the public); United States v. Willard, 2010 U.S. Dist. LEXIS 98216 (E.D. Va. 9/20/10) (use of Peer Spectre and Wyoming ToolKit is not a wiretap).

Petitioner failed to meet his burden in demonstrating any illegality on the part of the detective in utilizing the eP2P program.  Therefore, his claim of ineffectiveness fails as counsel cannot be deemed ineffective for failing to raise or pursue a meritless claim. Werts v. Vaughn, *supra*.

Finally, trial counsel did challenge the lawfulness of the "search" by Detective Cummins through his pre-trial claim that his accessing and downloading of Petitioner's files was an illegal search.  Trial counsel also testified at the PCRA evidentiary hearing that he saw no wiretap issue and was advised by Chris Lewis at the time of trial that Lewis – who testified that he set up Petitioner's Limewire program -- meant to set the settings for the files not to be shared, but they were, in fact, shared.  N.T. 4/4/13, pp. 182-184, 197-202.  Therefore, based on the information known to counsel at trial – which was, in turn corroborated by the testimony of Agent Coleman, Chris Lewis (in his *trial* testimony) and Detective Cummins' testimony both at trial and at the evidentiary hearing - it would be unreasonable for counsel to pursue any of the allegations now raised by Petitioner.  *See* Strickland v. Washington,

Petitioner is not entitled to relief.

**VI.**     <u>**CONCLUSION**</u>

WHEREFORE, for the foregoing reasons, the Commonwealth/Respondent respectfully requests that Petitioner's request for habeas corpus relief be DISMISSED and/or DENIED with prejudice.

Respectfully submitted,

/s/ Karen A. Diaz

kad9038
_____

Karen A. Diaz, Esquire
Deputy District Attorney

**CERTIFICATE OF SERVICE**

I, Karen A. Diaz, Esquire, Deputy District Attorney of Bucks County, do hereby swear and affirm that on the 9th day of March, 2015, a true and correct copy of Respondent's Answer is served upon the following in the manner indicated:

**VIA ELECTRONIC FILING:**

Clerk of the District Court
United States District Court
   for the Eastern District of Pennsylvania
2609 United States Courthouse
601 Market Street
Philadelphia, PA  19106

**VIA FIRST CLASS MAIL:**

The Honorable Marilyn Heffley
U.S. Magistrate Judge
United States District Court
   for the Eastern District of Pennsylvania
4001 United States Courthouse
601 Market Street
Philadelphia, PA  19106

Peter Goldberger, Esquire
50 Rittenhouse Place
Ardmore, PA 19003

                      Respectfully submitted,

                      /s/ Karen A. Diaz

                      kad9038

                      _____
                      Karen A. Diaz, Esquire
                      Deputy District Attorney
                      Bucks County Justice Center – 2nd Floor
                      100 N. Main Street
                      Doylestown, PA18901
                      (215) 348-6344
                      Attorney I.D. 56067
                      Attorney for the Commonwealth/Respondent