IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JASON PIASECKI,                     :        CASE NO. 14-CV-7004
                    PETITIONER      :
                                    :
        v.                          :
                                    :
COURT OF COMMON PLEAS OF            :
  BUCKS COUNTY, ET AL.,             :        (CIVIL ACTION)
                    RESPONDENTS      :

SUPPLEMENT TO ANSWER IN OPPOSITION TO PETITION FOR WRIT OF
HABEAS CORPUS AND MEMORANDUM OF LAW IN SUPPORT THEREOF
PURSUANT TO U.S.C.S. SECTION 2254, RULE 5

# VOLUME III

KAREN A. DIAZ
DEPUTY DISTRICT ATTORNEY

STEPHEN B. HARRIS
CHIEF OF APPEALS

DAVID W. HECKLER
DISTRICT ATTORNEY

DISTRICT ATTORNEY'S OFFICE
BUCKS COUNTY JUSTICE CENTER – 2nd FLOOR
100 N. MAIN STREET
DOYLESTOWN, PA18901
#(215) 348-6344

## TABLE OF CONTENTS[1]

**EXHIBIT A:**

AOPC Web Docketing Statement
Commonwealth v. Jason Piasecki, No. CP-09-CR-0005364-2009

**EXHIBIT B:**

PA Super Court Web Docket, Direct Appeal, No. 1397 EDA 2010

**EXHIBIT C:**

Opinion, Trial Court, 11/29/10

**EXHIBIT D:**

Brief for Appellant, Direct Appeal, No. 1397 EDA 2010 (Without Attachments)

**EXHIBIT E:**

Memorandum Opinion, PA Superior Court, No. 1397 EDA 2010, 7/25/11

**EXHIBIT F:**

Petition for Allowance of Appeal, Direct Appeal, No. 608 MAL 2011

**EXHIBIT G:**

PA Super Court Web Docket, PCRA Appeal, No. 1482 EDA 2013

**EXHIBIT H:**

Opinion, PCRA Court, 7/1/13

**EXHIBIT I:**

Brief for Appellant, PCRA Appeal, No. 1482 EDA 2013 (Without Attachments)

---

[1] Pursuant to this Honorable Court's Order of February 6, 2015, the Bucks County Clerk of Courts was directed to forward to this Honorable Court the contents of the Bucks County Clerk of Courts file on Bucks Co. Case No. CP-09-CR-0005364-2009.  The AOPC Web Docketing Statement reflects that the Clerk of Courts file contains the relevant notes of testimony, as well as the Court Opinions of the PCRA court and the Pennsylvania Superior Court. Therefore, this Supplement contains those appellate documents that Respondent believes are relevant but are not contained within in the Bucks County Clerk of Courts file.

**EXHIBIT J:**

**Memorandum Opinion**, PA Superior Court, No. 1482 EDA 2013, 7/25/11

**EXHIBIT K:**

**Petition for Allowance of Appeal**, PCRA Appeal, No. 178 MAL 2014

# EXHIBIT  G

11:43 A.M.

PCRA

**Appeal Docket Sheet**

**Superior Court of Pennsylvania**

**Docket Number:  1482 EDA 2013**

**Page 1 of 4**

**March 8, 2015**

### CAPTION

Commonwealth of Pennsylvania
      v.
Jason Piasecki
   Appellant

### CASE INFORMATION

| | | |
|---|---|---|
| Initiating Document: | Notice of Appeal | |
| Case Status: | Closed | |
| Case Processing Status: | October 2, 2014 | Completed |
| Journal Number: | J-S02026-14 | |

| | | | |
|---|---|---|---|
| Case Category: | Criminal | Case Type(s): | Corruption of Minors |
| | | | Endangering Welfare of Children |

### CONSOLIDATED CASES                    RELATED CASES

### SCHEDULED EVENT

Next Event Type:                                      Next Event Due Date:

### COUNSEL INFORMATION

**Appellant**     **Piasecki, Jason**
Pro Se:          No
IFP Status:
        Attorney:      Fink, Richard R.
        Law Firm:      Fink, Fink & Associates
        Address:       the Lofts AT Oxford Valley
                       174 Middletown Blvd Ste 300
                       Langhorne, PA 19047-3201
        Phone No:      (215) 741-1212              Fax No:

**Appellee**     **Commonwealth of Pennsylvania**
Pro Se:          No
IFP Status:
        Attorney:      Heckler, David Ward
        Law Firm:      Bucks County District Attorney's Office
        Address:       Bucks CO Da's Office
                       55 E Court St
                       Doylestown, PA 18901-4318
        Phone No:      (215) 348-6345              Fax No:

        Attorney:      Diaz, Karen Ann
        Address:       Bucks County District Attorney's Office
                       55 E Court St
                       Doylestown, PA 18901
        Phone No:      (215) 348-6331              Fax No: (215) 348-6299

Neither the Appellate Courts nor the Administrative Office of Pennsylvania Courts assumes any liability
for inaccurate or delayed data, errors or omissions on the docket sheets.

11:43 A.M.

**Appeal Docket Sheet**

**Docket Number:  1482 EDA 2013**

**Page 2 of 4**

**March 8, 2015**

| | PCRA |
| --- | --- |

**Superior Court of Pennsylvania**



## FEE INFORMATION

| Fee Dt | Fee Name | Fee Amt | Receipt Dt | Receipt No | Receipt Amt |
| --- | --- | --- | --- | --- | --- |
| 05/22/2013 | Notice of Appeal | 73.50 | 05/29/2013 | 2013-SPR-E-000945 | 73.50 |

## AGENCY/TRIAL COURT INFORMATION

| | | | |
| --- | --- | --- | --- |
| Court Below: | Bucks County Court of Common Pleas | | |
| County: | Bucks | Division: | Bucks County Criminal Division |
| Order Appealed From: | April 24, 2013 | Judicial District: | 07 |
| Documents Received: | May 29, 2013 | Notice of Appeal Filed: | May 22, 2013 |
| Order Type: | PCRA Order | | |
| OTN(s): | L5001964 | | |
| Lower Ct Docket No(s): | CP-09-CR-0005364-2009 | | |
| Lower Ct Judge(s): | Boylan, Rea Behney Judge | | |

## ORIGINAL RECORD CONTENT

| Original Record Item | Filed Date | Content Description |
| --- | --- | --- |
| Record | July 09, 2013 | 6 Vols of testimony |
| Exhibit(s) | July 09, 2013 | 2 Envs Filed |
| Testimony | August 14, 2013 | 1 Volume |

**Date of Remand of Record:**  October 2, 2014

## BRIEFING SCHEDULE

| **Appellant** | | **Appellee** | |
| --- | --- | --- | --- |
| **Piasecki, Jason** | | **Commonwealth of Pennsylvania** | |
| **Brief** | | **Brief** | |
| Due: October 18, 2013 | Filed: October 18, 2013 | Due: November 18, 2013 | Filed: November 8, 2013 |
| **Reproduced Record** | | | |
| Due: October 18, 2013 | Filed: October 18, 2013 | | |

## DOCKET ENTRY

| Filed Date | Docket Entry / Representing | Participant Type | Filed By |
| --- | --- | --- | --- |
| **May 29, 2013** | Notice of Appeal Docketed | | |
| | | Appellant | Piasecki, Jason |
| **May 29, 2013** | Docketing Statement Exited (Criminal) | | |
| | | | Bramblett, Karen Reid |
| **June 12, 2013** | Docketing Statement Received (Criminal) | | |
| | | Appellant | Piasecki, Jason |
| **July 9, 2013** | Trial Court Record and Opinion Received | | |
| | | | Bucks County Court of Common Pleas |
| **July 26, 2013** | Designation of Contents of Reproduced Record | | |
| | | Appellant | Piasecki, Jason |
| **August 9, 2013** | Application for Extension of Time to File Brief - First Request | | |
| | | Appellant | Piasecki, Jason |

11:43 A.M.

**Appeal Docket Sheet**

**Docket Number:  1482 EDA 2013**

**Page 3 of 4**

**March 8, 2015**

| PCRA |
| --- |

**Superior Court of Pennsylvania**



## DOCKET ENTRY

| Filed Date | Docket Entry / Representing | Participant Type | Filed By |
| --- | --- | --- | --- |
| August 15, 2013 | Order Granting Application for Extension of Time to File Appellant Brief | | Per Curiam |
| | Comment:  until 10/18/13. | | |
| October 18, 2013 | Appellant's Brief Filed | Appellant | Piasecki, Jason |
| October 18, 2013 | Reproduced Record Filed | Appellant | Piasecki, Jason |
| October 24, 2013 | Submitted on Brief | | Eastern District Filing Office |
| November 8, 2013 | Praecipe for Appearance - District Attorney Commonwealth of Pennsylvania | Appellee | Diaz, Karen Ann |
| November 8, 2013 | Appellee's Brief Filed | Appellee | Commonwealth of Pennsylvania |
| December 11, 2013 | Submission Letter Sent | | O'Connor, Jr., Charles E. |
| February 21, 2014 | Appeal Dismissed | | Olson, Judith F. |
| March 19, 2014 | Petition for Allowance of Appeal to PA Supreme Court Filed | | Supreme Court of Pennsylvania |
| | Comment:  178 MAL 2014 | | |
| August 19, 2014 | Order Denying Petition for Allowance of Appeal to PA Supreme Court | | Supreme Court of Pennsylvania |
| October 2, 2014 | Remitted | | Seletyn, Joseph D. |

## SESSION INFORMATION

Journal Number:        J-S02026-14
Consideration Type:    Submit Panel
Listed/Submitted Date: January 6, 2014

Panel Composition:
    The Honorable Susan Peikes Gantman    President Judge
    The Honorable Judith F. Olson    Judge
    The Honorable William H. Platt    Judge

## DISPOSITION INFORMATION

| | | | |
| --- | --- | --- | --- |
| Final Disposition: | No | | |
| Related Journal No: | J-S02026-14 | Judgment Date: | February 21, 2014 |
| Category: | Decided | Disposition Author: | Olson, Judith F. |
| Disposition: | Appeal Dismissed | Disposition Date: | February 21, 2014 |

Neither the Appellate Courts nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on the docket sheets.

11:43 A.M.

PCRA

**Appeal Docket Sheet**

**Superior Court of Pennsylvania**

**Docket Number:  1482 EDA 2013**

**Page 4 of 4**

**March 8, 2015**

| DISPOSITION INFORMATION | | |
|---|---|---|

| Dispositional Filing: | **Memorandum** | Filing Author: | Olson, Judith F. |
|---|---|---|---|
| Filed Date: | 2/21/2014  12:00:00AM | | |

| REARGUMENT / RECONSIDERATION / REMITTAL | | |
|---|---|---|

Filed Date:
Disposition:
Disposition Date:

| Record Remittal: | October 2, 2014 |
|---|---|

| CROSS COURT ACTIONS | | |
|---|---|---|

| Docket Number: | 178 MAL 2014 |
|---|---|
| Court Name: | Supreme |
| Short Caption: | Commonwealth v. Piasecki, J., Pet. |
| Case Status: | Closed |
| Disposition: | Order Denying Petition for Allowance of Appeal |
| Disposition Date: | August 19, 2014 |
| Petition Reargument/Reconsideration Filed Date: | |
| Reargument Disposition: | |
| Reargument Disposition Date: | |
| Cross Court Action Type: | Filing of Decision or Opinion |

# EXHIBIT  H

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | No. 5364/2009 |
| | : | (1482 EDA 2013) |
| v. | : | |
| | : | |
| JASON PIASECKI | : | |

## M E M O R A N D U M   O P I N I O N

Defendant, Jason Piasecki, appeals the denial of his first petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, *et seq.*  This Court believes that this appeal should be quashed because the defendant is ineligible to file an appeal as his sentence expired on April 26, 2013.

The following is a summary of the relevant procedural history.  On November 9, 2009, Defendant filed a Motion to Suppress Evidence.  On January 6, 2010, Defendant filed Motion to Dismiss Due to Commonwealth Destruction of Exculpatory Evidence.  On January 12, 2010, after a hearing on the motions, this Court denied Defendant's pretrial motions.  On January 12, 2010, a waiver trial commenced.

At the conclusion of the Commonwealth's case, this Court sustained a demurrer on fifteen counts of Sexual Abuse of Children- Dissemination of Photographs, Videotapes, Computer Depictions and Films.[1]  N.T. 1/12/10, p. 86.  On January 14, 2010, at the conclusion of the trial, Defendant was found guilty of fifteen counts of Sexual Abuse of Children- Possession of Child Pornography.[2]  N.T. 1/14/10, p. 83.  Sentencing was deferred for a sexual offender assessment pursuant to 42 Pa.C.S. § 9795.4.  The assessment determined that Defendant did not

---

[1] 18 Pa.C.S. § 6312(c)(1).

[2] 18 Pa.C.S. § 6312(d)(1).

meet the criteria for a sexually violent predator.  N.T. 4/26/10, p. 2.  On April 26, 2010,

Defendant was sentenced to three years county probation.  N.T. 4/26/10, p. 13.

On May 21, 2010, Defendant filed a Notice of Appeal to the Superior Court.  On July 25,

2011, the Superior Court affirmed this Court's judgment of sentence.  1397 EDA 2010.

Defendant filed a petition for allowance of appeal with the Supreme Court of Pennsylvania,

which was denied on January 6, 2012.  608 MAL 2011.

On December 19, 2012, Defendant through counsel filed his first PCRA petition.  On

January 3, 2013, this Court issued an Order to Answer on the Commonwealth returnable by

January 28, 2013.  On January 24, 2013, this Court scheduled a hearing for April 4, 2013.  On

January 28, 2013, the Commonwealth filed an Answer.  On March 28, 2013, Defendant filed

"Supplement to Paragraphs 11 and 13 of Petition for Post Conviction Collateral Relief."

On April 4, 2013 and April 16, 2013, evidentiary hearings were held.  At the conclusion

of the hearings, this Court took the matter under advisement.  Counsel also submitted

memoranda to this Court.  On April 24, 2013, by written Order, this Court denied Defendant's

PCRA petition and advised Defendant that he "may appeal to the Superior Court of Pennsylvania

within thirty (30) days from entry of this Order.  Pa.R.A.P. 903; *but see* 42 Pa.C.S.

§9543(a)(1)(i)."

On April 26, 2013, Defendant's probationary sentence expired.  On May 22, 2013,

Defendant filed the instant appeal with the Superior Court.

Under Pennsylvania law, "[t]o be eligible for relief under [the PCRA], the petitioner

must plead and prove by a preponderance of the evidence all of the following: That the

petitioner has been convicted of a crime under the laws of this Commonwealth and is at the

time relief is granted: currently serving a sentence of imprisonment, probation or parole for

the crime.  42 Pa.C.S. § 9543(a)(1)(i)(emphasis added).  In the present case, Defendant is no

longer serving a sentence as his probation expired on April 26, 2013.

Our Supreme Court addressed a similar matter in *Commonwealth v. Ahlborn*, 699 A.2d

718 (1997).  In *Ahlborn*,

> At issue is whether one who has filed a PCRA petition while serving a sentence of
> imprisonment remains eligible for relief in the event that, **prior to any final
> adjudication of the petition, he is released from custody.**
>
> . . .
>
> It is well established that when the language of a statute is clear and
> unambiguous, it must be given effect in accordance with its plain and obvious
> meaning.  *Commonwealth v. Corporan*, 613 A.2d 530, 531 (Pa. 1992);
> *Commonwealth v. Kriston*, 588 A.2d 898, 899 (Pa. 1991); *Commonwealth v.
> Bursick*, 584 A.2d 291, 293 (Pa. 1990); *Commonwealth v. Bell*, 516 A.2d 1172,
> 1175 (Pa. 1986); Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b).  **Here,
> the denial of relief for a petitioner who has finished serving his sentence is
> required by the plain language of the statute.  To be eligible for relief a
> petitioner must be *currently* serving a sentence of imprisonment, probation
> or parole.  To grant relief at a time when appellant is *not* currently serving
> such a sentence would be to ignore the language of the statute.  . . .**  The
> search for legislative intent is at an end, however, where the language used by the
> legislature is clear.  *Bursick*, 584 A.2d at 293 ("We are constrained ... to apply
> statutory language enacted by the legislature rather than speculate as to whether
> the legislative spirit or intent differs from what has been plainly expressed in the
> relevant statutes."); *Bell*, 516 A.2d at 1175 (When the language of a statute is
> plain and clear, it is inappropriate to inquire further into legislative intent.).  *See
> also* Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b) ("When the words
> of a statute are clear and free from all ambiguity, the letter of it is not to be
> disregarded under the pretext of pursuing its spirit.").

*Ahlborn*, 699 A.2d at 719-20 (emphasis added).  *See also Commonwealth v. Matin*, 832 A.2d

1141, 1142 (Pa. Super. 2003).  Here, appellate review of the instant matter would constitute a

final adjudication of Defendant's petition on the merits.

Accordingly, this Court believes that Defendant is no longer eligible for relief pursuant to

the PCRA, as he is no longer serving a sentence, and is unable to file the instant appeal.

However, if the Honorable Superior Court disagrees with this Court's interpretation of

Defendant's eligibility, this Court respectfully requests that it remand this matter for an Opinion on the merits of the denial of Defendant's PCRA petition.

DATE: July 1, 2013                    BY THE COURT,


_____
REA B. BOYLAN, J.

Copies sent to:

Karen Diaz, Esq.
Bucks County District Attorney's Office
55 East Court Street
Doylestown, PA 18901
       Counsel for the Commonwealth

Richard Fink, Esq.
Fink, Fink & Associates
The Lofts at Oxford Valley
174 Middletown Road, Suite 300
Langhorne, PA 19047
       Counsel for Defendant, Jason Piasecki

# EXHIBIT  I

# IN THE SUPERIOR COURT OF PENNSYLVANIA

## NO. 1482 EDA 2013

### COMMONWEALTH OF PENNSYLVANIA,
*Appellee*

### VS.

### JASON PIASECKI,
*Appellant*

## BRIEF OF APPELLANT

APPEAL FROM ORDER ENTERED ON APRIL 23, 2013 BY
COURT OF COMMON PLEAS OF BUCKS COUNTY
DOCKET NO. 2009-5364

**RICHARD R. FINK, ESQUIRE**
Attorney I.D. # 16211
174 MIDDLETOWN BLVD
SUITE 300
LANGHORNE, PA 19047
(215) 741-1212

**ATTORNEY FOR APPELLANT**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS............................................................................. i

TABLE OF CITATIONS........................................................................... ii

1. STATEMENT OF JURISDICTION......................................................1

2. ORDER OR OTHER DETERMINATION IN QUESTION ....................2

3. STATEMENT OF BOTH THE SCOPE AND STANDARD OF REVIEW............................3

4. STATEMENT OF THE QUESTIONS INVOLVED ................................4

5. STATEMENT OF THE CASE.............................................................5

6. SUMMARY OF ARGUMENT ..........................................................15

7. ARGUMENT FOR APPELLANT ......................................................18

      **A.**      **Appellant is entitled to review of the lower court's denial of Post-Conviction Relief Act (PCRA) relief where he had not completed serving his sentence at the time of the trial court's opinion but had completed serving his sentence at time he filed the appeal of the denial of his PCRA petition.**

      **B.**      **Trial counsel was ineffective in failing to file and litigate a pre-trial motion to suppress the evidence derived from a search of Appellant's computer prior to obtaining a search warrant, where he had an expectation of privacy in its contents, and the intrusion violated the Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. Ann. § 5701 et. seq thus violating rights secured to him by the Constitution of the Commonwealth of Pennsylvania, Article 1, Sections 8 and 9, as well as the Constitution of the United States of America, Amendments Fourth and Fourteenth.**

      **C.**      **Trial counsel was ineffective by failing to object to the admission of Appellant's confession on the basis of the corpus delecti rule.**

8. CONCLUSION AND RELIEF SOUGHT............................................38

PROOF OF SERVICE.......................................................................39

i

**APPENDICES:**

A. COPY OF THE STATEMENTS OF THE MATTERS COMPLAINED OF ON APPEAL
   PURSUANT TO RULE 1925(b)

B. OPINION OF THE COURT

C. CERTIFICATION OF COMPLIANCE

# TABLE OF CITATIONS

### CASES

*Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (U.S.N.Y. May 20, 1968)....23

*Commonwealth v. Ahlborn*, 548 Pa. 544, 699 A.2d 718 (1997)................................................18, 19

*Commonwealth v. Ahlborn*, 453 Pa. Super. 124, 683 A.2d 632 (1996)

    <u>aff'd,</u> 548 Pa. 544, 699 A.2d 718 (1997)................................................20, 21, 24, 25

*Commonwealth v. Ahlborn*, 657 A.2d 518 (Pa. Super., 1995)........................................................36

*Commonwealth v. Bell,* 512 Pa. 334, 339–40, 516 A.2d 1172, 1175 (1986)................................19

*Commonwealth v. Bursick,* 526 Pa. 6, 10, 584 A.2d 291, 293 (1990)...........................................19

*Commonwealth v. Chambliss*, 847 A.2d 115 (Pa. Super., 2004)....................................................36

*Commonwealth v. Corporan*, 531 Pa. 348, 351, 613 A.2d 530, 531 (1992) ................................19

*Commonwealth v. Diodoro*, 601 Pa. 6, 970 A.2d 1100, 1108 (2009),

    cert. denied, 130 S. Ct. 200, 175 L. Ed. 2d 127 (2009) ........................................................33

*Commonwealth v. Fears*, 575 Pa. 281, 836 A.2d 52 (2003),

    cert. denied, 545 U.S. 1141, 125 S. Ct. 2956, 162 L.Ed. 2d 891 (2005) ...........................35

*Commonwealth v. Grant*, 2010 PA Super 45, 992 A.2d 152, 162 (Pa. Super. Ct. 2010)........21, 38

*Commonwealth v. Guess*, 2012 PA Super 196, 53 A.3d 895 (2012).......................................31, 36

*Commonwealth v. Halley*, 582 Pa. 164, 169 n. 2, 870 A.2d 795, 799 n. 2 (2005) ...........................3

*Commonwealth v. Hernandez*, 755 A.2d 1 (Pa. Super. Ct. 2000)

    <u>aff'd in part,</u> 572 Pa. 477, 817 A.2d 479 (2003)................................................................22

*Commonwealth v. Kriston*, 527 Pa. 90, 94, 588 A.2d 898, 899 (1991).........................................19

*Commonwealth v. Matin*, 832 A.2d 1141, 1143 (Pa.Super.2003), appeal denied,

    577 Pa. 678, 843 A.2d 1237 (2004) ...................................................................18

*Commonwealth v. McGuire*, 548 Pa. 476, 698 A.2d 61 (1997).........................................20

*Commonwealth v. Persichini*, 444 Pa. Super. 110, 663 A.2d 699 (1995),

    opinion aff'd, 558 Pa. 449, 737 A.2d 1208 (1999)..............................................36

*Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293 (1999)..........................................22

*Commonwealth v. Sheehan*, 446 Pa. 35, 285 A.2d 465 (1971)..........................................24

*Commonwealth v. Taylor*, 574 Pa. 390, 831 A.2d 587 (2003) ..........................................36

*Commonwealth v. Verticelli*, 550 Pa. 435, 706 A.2d 820 (1998) ......................................36

*Commonwealth v. Weatherill*, 2011 PA Super 144, 24 A.3d 435 (2011).............................3

*Commonwealth v. Young*, 2011 PA Super 277, 35 A.3d 54, 65 (Pa. Super. Ct. 2011)

    appeal denied, 616 Pa. 646, 48 A.3d 1249 (2012).......................................21, 38

*Fay v. Noia*, 372 U.S. 391, 424, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) ...............................25

*Lee v. Stickman*, C.A.3 (Pa.) 2004, 357 F.3d 338 ...........................................................22

*Parker v. Ellis*, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (U.S.Tex. May 16, 1960) .................22

### STATUTES

18 Pa.C.S.A. § 5702.......................................................................................................26

18 Pa.C.S.A. § 5703.......................................................................................................31

18 Pa.C.S.A. § 5721.1....................................................................................................31

18 Pa.C.S.A. § 5771 and 5772 ..................................................................................30, 31

18 Pa.C.S. § 6312(d) ..........................................................................................17, 33, 35

18 USC 3121 .................................................................................................................30

18 USC 3127 .................................................................................................................30

42 Pa.C.S.A. § 742 ...........................................................................................................1

42 Pa.C.S.A. § 9543 ......................................................................................................18

42 Pa.C.S.A. § 9546 ......................................................................................................23

The Constitution of the Commonwealth of Pennsylvania, Article 1, Sections 9, 11 and 14, and

Pa. Const. art. V, § 9 .....................................................................................................24

Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b)..............................................19

## RULES

Pa.R.A.P. 121 ................................................................................................................39

1.   **STATEMENT OF JURISDICTION**

Jurisdiction is vested in the Superior Court of Pennsylvania pursuant to 42 Pa.C.S.A. §742 in that "the Superior Court shall have exclusive appellate jurisdiction of all appeals and final Orders of the courts of common pleas," except such classes of appeals within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

The appeal *sub judice* is not of such class to reside within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court pursuant to 42 Pa.C.S.A. §742.

2.     **ORDER OR OTHER DETERMINATION IN QUESTION**

The Honorable Rea B. Boylan of the Bucks County Court of Common Pleas entered an Order on April 23, 2013, denying the Defendant's Petition for Post-Conviction Collateral Relief.

2

3.     STATEMENT OF BOTH THE SCOPE AND STANDARD OF REVIEW

SCOPE OF REVIEW

In evaluating the decision of the lower court on a petition for post-conviction relief, a court's scope of review is limited to the findings of the post-conviction court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. *Commonwealth v. Weatherill*, 2011 PA Super 144, 24 A.3d 435 (2011).

STANDARD OF REVIEW

This court's standard of reviewing an order dismissing a PCRA petition is whether the determination of the PCRA court is supported by the record evidence and is free of legal error. *Commonwealth v. Halley*, 582 Pa. 164, 169 n. 2, 870 A.2d 795, 799 n. 2 (2005).

4.    **STATEMENT OF QUESTIONS INVOLVED**

A.    Is Appellant entitled to review of the lower court's denial of Post Conviction Relief Act (PCRA) relief where he had not completed serving his sentence at the time of the trial court's opinion but had completed serving his sentence at time he filed the appeal of the denial of his PCRA petition? Answered in the negative by the Court below.

B.    Was trial counsel ineffective in failing to file and litigate a pre-trial motion to suppress the evidence derived from a search of Appellant's computer prior to obtaining a search warrant, where he had an expectation of privacy in its contents, and the intrusion violated the Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. Ann. § 5701 *et. seq* thus violating rights secured to him by the Constitution of the Commonwealth of Pennsylvania, Article 1, Sections 8 and 9, as well as the Constitution of the United States of America, Amendments Fourth and Fourteenth? Answered in the negative by the Court below.

C.    Was trial counsel ineffective by failing to object to the admission of Appellant's confession on the basis of the corpus delecti rule? Answered in the negative by the Court below.

5.    **STATEMENT OF THE CASE**

      This is an appeal from the denial of the Defendant's Petition for Post-Conviction Collateral

Relief.

**PROCEDURAL HISTORY**

      Jason Piasecki was charged with 15 counts of sexual abuse of children, dissemination of

child pornography and 15 counts of sexual abuse of children, possession of child pornography.

Relevant to the collateral consequences of his convictions, *infra.*, Jason Piasecki lives at home at age

33. His reading is at the third grade level and his math is at the second grade level. He has a difficult

time with written and verbal information. He has Asperger's syndrome, and works part-time at a job

arranged for him through the Pennsylvania Department of Office of Vocational Rehabilitation, where

he sits outside an industrial dump, and watches in order to call his boss and report if something has

happened. He receives social security disability income because of his cognitive disabilities. He has

had 20 jobs since he began working. At Burger King he could not following the directions for

making a hamburger quickly. He could not match hangers by size at Sims, and could not match the

customer orders at the conveyor belt at Toys-R-Us. He could not pass the simple math test at

Redner's. He cannot pay bills. He cannot spell simple words. He has an 8 year old son in the second

grade (R. 224a-234a). Because of his conviction of 15 counts of sexual abuse of children-possession

of child pornography, he is subject to SORNA for a period of 15 years.

      Mr. Piasecki was represented by attorney Douglas Maloney Esq. Prior to the trial, which

commenced on January 12th 2010, the court denied a Motion to Suppress Evidence and to Dismiss

due to Commonwealth Destruction of Exculpatory Evidence. A bench trial followed, and on January

14th of 2010 he was found guilty of 15 counts of sexual abuse of children, possession of child

pornography. The court had sustained a demurrer on the other 15 counts involving dissemination. On April 26, 2010, he was sentenced to concurrent counts of three years probation.

On May 21, 2010, he filed a Notice of Appeal to the Superior Court at docket number 1397 EDA 2010. On July 25, 2011, the Superior Court affirmed judgment of sentence. On August 22, 2011, he filed a Petition for Allowance of Appeal with the Supreme Court at docket number 608 MAL 2011. On January 6, 2012, the Supreme Court filed an order denying the Petition for Allowance of Appeal.

On December 19, 2012, a Petition for Post-Conviction Relief was filed. The first the PCRA hearing was held on April 4th, 2013. The PCRA hearing concluded on April 16th, 2013. On April 24, 2013, the Honorable Judge Rea B. Boylan denied Appellant's Petition for Post-Conviction Relief. Appellant filed a timely appeal to this Court on May 22, 2013. Two days later his probationary sentence expired.

**FACTS OF THE CASE**

Prior to obtaining a search warrant for Piasecki's computer, on March 12th 2009, and in order to obtain the information used in the probable cause for that search warrant, Detective Jeffrey Cummins used EP2P (enhanced peer to peer) software simultaneously with Netstat (a command line showing the open connections from Cummins's computer to Piasecki's to confirm, by identifying the IP address of the computer with which he was connected, that he was downloading from the Piasecki computer), to explore the Piasecki computer (R. 600a and 614a). A version of LimeWire, EP2P software was developed by the FBI (R. 597a), and is used solely by law enforcement (R. 636a).

The Netstat and EP2P enabled him to develop screen shots (pictures of what was showing on his computer monitor). The screen shots showed the hash values (unique identifiers) of each file that

the detective supposed were able to be shared by the Piasecki computer with others who were not using Netstat and EP2P. The detective was also able to view from the Piasecki computer the size of the file correlating to the hash value, the **titles of the individual files**, and the **GUID** (globally unique identifier of the Piasecki computer given during the installation of LimeWire on a user's computer, like a license key). He was also able to see Piasecki's internet service provider, the port (a port assists in transferring data over the Internet between two computers) on the Piasecki computer which was used by the software Detective Cummins ran, to enter the Piasecki computer. The port number disclosed on the screen shots is the port number being used by the Piasecki LimeWire program that is allowing him to communicate with other computers to send and receive traffic. Detective Cummins was also able to tell where the computer to which he was connecting was located, geographically (the town and state). The EP2P was run on March 12th, and the Netstat was used 4 or 5 times on the Piasecki computer, the EP2P running for almost 2 hours (R. 596a-R. 615a). By establishing a "direct connection" with the Piasecki computer on March 12th, he was able to download files directly from that computer as opposed to downloading, the way a normal LimeWire user does, pieces of the files from "ultra peers" (ultra peers basically gather and deliver information, from those LimeWire users who are sharing files, in packets from various computers and assembled as one file when downloaded, as LimeWire has no specific server) (R. 598a). However, using the EP2P software, Detective Cummins was able to download the files and the information from the Piasecki computer exclusively (R. 619a). On March 12th the detective found, among other files, three MPG files, and an MPEG file, all of which were types of or formats of video files, and all of which were used as the probable cause for the search warrant April 1, 2009 resulting in the

7

confiscation, analysis and subsequent use as evidence at trial of the contents of the Piasecki computer.

On March 12, 2009 when he was operating the EP2P and Netstat he was able to see information in the Piasecki computer, *i.e.* that it contained at least 446 document files, at least 22 program files and at least 4,933 video files listed as video files. He was able to watch the progress of the downloading of the names of the files on his computer as it was taking place (R. 678a). The downloading process on March 12th used some of the resources Piasecki computer including its computer processing unit.

Although the detective testified that after using the EP2P and establishing a direct connection with the Piasecki computer he viewed the files which the Piasecki computer was "offering to share," Joseph Henderson, the defense expert at the PCRA hearing explained that when LimeWire is installed on a computer the term "shared" is a name assigned to a folder by LimeWire. If a file is placed in that folder it can be shared with others, but just because a file is in that folder does not necessarily mean that it *is* shared. One can specify the file extensions (describing the type of or format of that particular file) that the user desires to share (R. 712a). There are boxes can be checked upon setting up or altering the LimeWire software in order to select whether or not different types of files, for example, MPEG, MPG and AVI files can be shared. If one checks the boxes, files with those types of extensions are allowed to be shared by LimeWire on the Gnutella network. If they are unchecked LimeWire is not allowed to share them on that network (R. 712a-R. 713a). In addition to videos, one could choose to share images, documents or programs.

Changing these options changes the dot props file. The LimeWire "dot props" file is the

configuration file. One can tell, during a forensic analysis how LimeWire was configured by looking at this file and it will show what is set to share and what is set not to share. When he examined the computer forensic analysis done by the prosecution on the seized Piasecki computer, Henderson found that it contained a list of the contents of the LimeWire dot props file for the Piasecki computer which was configured to share certain types of files, which he listed, and specifically set **not to share files including MPG, MPEG**, and AVI files (R. 720a and R. 746a). The types of video files downloaded by Detective Cummins' use of EP2P with Netstat however, and used specifically in the affidavit of probable cause to seize the computer, included MPG's and MPEG's files, precisely the types of files which the Piasecki computer had set not to share (R. 720a). They would not have been accessible to other users on the Gnutella network nor capable of being downloaded by other users using LimeWire on the Gnutella network. (R. 720a - R. 721a). The props file further showed that the props file was last modified January 28th of 2009. Had it been changed after that time the update would have been apparent in the props file (R. 722a). On the date that the computer was accessed by Detective Cummins, prior to his obtaining the search warrant, the Piasecki computer that he accessed was set not to share the types of files he downloaded from it by using the EP2P and Netstat (R. 746a).

He agreed with Detective Cummins that the transmission to Cummins of the IP address of the Piasecki computer was accomplished by electronic impulses, that they identified the originating number or the IP address of the Piasecki computer, and that the Piasecki computer was a device from which electronic communications were being transmitted (R. 730a), although the objection to the question of whether it was a trap and trace device was sustained. With regard to the word pen register, defined at 18 U.S.C. 3127 *infra.,* he stated that the process which Detective Cummins used

9

enabled him to capture the IP address and port of the Piasecki computer via EP2P, is by an electronic communication (R. 731a).

Christopher Lewis testified at the PCRA hearing that he originally set up the LimeWire on the Piasecki computer and set it up not to share MPG and MPEG files (R. 751a).

Trial counsel did litigate or appeal the potential violations of electronic surveillance laws, nor did he object on the basis of the corpus delecti rule to his client's confession. He stated that the reason did not raise the corpus delecti was that he had stipulated into the non-jury trial that all of the evidence from the suppression hearing including a lot of evidence that he thought was very favorable to his client, and that there was no purpose to be served by insisting that the child pornography evidence came in first and the statement later. He agreed that he could have stipulated, for the purpose of the trial, to all of the evidence but the confession, that he did not discuss that with the prosecutor and that it did not occur to him that it made any sense, and that he could theoretically have argued the corpus delecti rule but it was apparent to him that the Commonwealth was going to be able to establish the presence of child pornography and the corpus of the crime. He recalled that he had achieved concessions from prosecution witnesses during the trial that they could not say that the pornography had ever been viewed by anyone, and that the *Diodoro* case, *infra.*, required either viewing or accessing of the pornography. He stated that in his view the presence of child pornography on the computer established the corpus and that his client's confession simply established that he had accessed it (R. 761a-R. 763a).

With regard to the electronic surveillance, he had communicated to his client and his father that they might want to secure a forensic computer expert for the trial, that he was unsure whether there was anything a computer expert could help him with in the case, and had contacted one or two

10

computer experts, but did not think that he found anything that required a forensic computer expert. He did not discuss with his client the question of whether or not the prosecutor used a trap and trace device or a pen register, nor whether or not the prosecution of this case violated Pennsylvania's Wiretap Act. He did not remember whether or not he had seen Detective Cummins' logs or the Netstat logs in preparation of the case for trial. Mr. Maloney testified that he had a general knowledge of Pennsylvania's definition of trap and trace but could not say that he was an expert on wire interceptions. He stated that in the discovery he received he probably looked at the props file but it probably did not mean much to him (R. 768a – R. 793a).

Detective Coleman had never really tested the LimeWire program and at the end of the first PCRA hearing he decided to see what it could do even though he had never been taught this in class nor had any physical hands on testing with it (R. 837a). He attempted to show that no matter what changes were made to the "saved" folder (not the "shared" folder) that if anything was in the saved folder it would be shared with other LimeWire users (R. 838a). Detective Cummins attempted to run an experiment for the PCRA court and opined that he was still able to download a file in the "saved" folder on the computer on which he ran the experiment, (not the Piasecki computer) even though the LimeWire dot props file was set not to share it. He opined that the place where one unchecks extensions applies only to the "shared" folder and does not apply to the "saved" folder (R. 803a). He testified that he had run out of time and could not show a picture in his experiment of whether or not the box is checked for sharing things in the shared file or sharing downloads to the unshared folders or sharing all downloads (R. 805a). Cummins' opinion after running the experiment was that if a file

11

was downloaded into the "saved" file of a LimeWire user it is going to be shared and that there is nothing that can be done about it (R. 822a).

His opinion however, was that **if information is not in the LimeWire shared subfolder and in none of the LimeWire folders**, he would not have been able to view those files (R. 829a). However, he testified on cross examination that he had found video #1 which he downloaded on March 12th and used in the affidavit of probable cause, under "c/porn" and the second video he downloaded, under "C drive/documents and settings /Jason/shared/" indicating they were **not even in the LimeWire file** (R. 835a).

Joseph Henderson, the Appellant's expert was recalled at the conclusion of Detective Cummins's testimony and testified that one of the files downloaded on March 12th has a path of Piasecki slash 358 dash 09HD2 back slash C back slash documents and settings back slash Jason back slash shared and then the name of the file, is not found in the LimeWire path, since it does not include the word LimeWire (R. 844a), and is therefore not found in the **LimeWire shared nor LimeWire saved** folders (R. 844a). That file would not have been able to be shared with a normal LimeWire user because of the settings in the LimeWire dot props file. The same is true of another downloaded file, from apparent child pornography video report in D-4 No. 2, 9 year old Vicky (R. 845a). That No. 2 Vicky file was set not to be shared and the file path on the Piasecki computer was not a shared folder (R. 845a). He testified that Detective Cummins' experiment (unlike Henderson's) was flawed in that the props file from Detective Cummins' experiment, and the props file from the actual Piasecki computer are completely different (R. 848a), and that all of the entries needed for the Piasecki computer not to share those files were present in the Piasecki computer but not in Cummins's experimental computer (R. 854a). Consequently Cummins's experiment would

result in his seeing files which he would not have been able to see on the Piasecki computer because of the different configuration of those props files. The types of files including JPEG, MPG, and MPEG files downloaded on March 12, 2009 were set in the Piasecki computer not to share regardless of whether they are in the shared or the saved folders (R. 854a).

After the flaws in Detective Cummins's first experiment during the PCRA were disclosed, he was recalled and said that he went back to the police station and unchecked the box on an experimental target computer so that no images were supposed to be shared and even though there were images in the saved folder he was still able to download two images from the target computer (R. 857a). He testified that he had set LimeWire not to share any image files, that he had unchecked the box stating "shared downloads saved unshared folders," meaning that one is not sharing downloads that are in unshared folders (R. 859a). He found that he could see 2 image files indicating that they were still being shared from computer #1 even though they were marked not to be shared (R. 860a).

Mr. Henderson was again recalled and again testified that again the props file used by Detective Cummins in his experiment were not the same as the props file which controlled the Piasecki computer on March 12, 2009. Because the boxes checked in the Cummins experiment are not the same as the boxes checked in the Piasecki computer on that date, and due to the fact that the Piasecki computer was set not to share MPG and MPEG files unlike Cummins's second experiment, the second experiment again does not really show anything about the Piasecki computer's accessibility on March 12 (R. 864a).

Regarding the corpus delecti, salient testimony was given during the pretrial motions by the prosecution's forensic expert, Agent Coleman, that there was no evidence that anyone viewed any of

the files downloaded into Piasecki's computer, and they could have been set to download automatically without being viewed by anyone or by someone who has only seen the title of the file being downloaded (R. 317a). Some confusion could have been caused by the fact that LimeWire labels an option to view, as a file is being downloaded, as a "preview file," despite the fact that it is possible that no one ever viewed the "preview." The detective said that he could not testify that anybody looked at any of the files other than the preview files (R. 309a) and testified also that he could not tell us that any of these preview files were actually viewed (R. 317a). In fact, he said, it is possible that a mass download or a single download can be made without even seeing the titles of what is being downloaded because of the varying width of the columns providing information on what can be downloaded (R. 413a). Henderson also testified that the existence of a "preview file" on a computer hard drive does not mean that anyone actually viewed it despite the name "preview." (R. 723a). There is no forensic artifact from which one could tell whether a user watched or played the video for any amount of time (R. 723a).

6.     <u>SUMMARY OF ARGUMENT</u>

A.     **Appellant is entitled to review of the lower court's denial of Post Conviction Relief Act (PCRA) relief where he had not completed serving his sentence at the time of the trial court's opinion but had completed serving his sentence at time he filed the appeal of the denial of his PCRA petition.**

Unlike *Ahlborn* and *Matin*, Piasecki is eligible for PCRA relief eligible because he was serving a sentence at both the pleading and proof stages of the PCRA in accordance with the plain language of the statute. The appeal is not moot because this Court is not without the ability to grant any relief, since this court can reverse the Lower Court's denial of the relief requested there, and grant a new trial, or vacate the conviction, giving the litigant the necessary stake in the outcome. This Court also has used the power not to remand the case where doing so would work an injustice on the appellant whose claim would then be untimely under the Post Conviction Relief Act, and to examine the appellant's claim, since the record, as in this case, was adequate for review. The case is also not moot because of the particularly draconian collateral consequences of SORNA to this Appellant which continue despite that fact that he has completed serving the sentence imposed. Petitioner also falls under *Lee v. Stickman's* exception to the mootness doctrine where he took all possible steps to have his claims promptly reviewed prior to his release.

B.     **Trial counsel was ineffective in failing to file and litigate a pre-trial motion to suppress the evidence derived from a search of Appellant's computer prior to obtaining a search warrant, where he had an expectation of privacy in its contents, and the intrusion**

violated the Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. Ann. §
5701 et. seq thus violating rights secured to him by the Constitution of the Commonwealth of
Pennsylvania, Article 1, Sections 8 and 9, as well as the Constitution of the United States of
America, Amendments Fourth and Fourteenth.

   Where without a prior court order, the agent's initial intrusion into the Piasecki computer *via*
software not available to the general public bypassed that computer's privacy settings of "not to
share," bypassed the user's expectation of privacy,  and resulted in the viewing of  information
inaccessible to the general public,  the use of that private information,  to obtain a search warrant for
that computer renders the subsequent seizure and search of the computer and the disclosure of the
evidence from that computer  a crime and the search of the computer, could have been suppressed.
The failure to apply for suppression establishes counsel's ineffectiveness, as the underlying claim is
of arguable merit, counsel had no reasonable strategic basis for his inaction; and but for the failure of
counsel to litigate a suppression motion, there is a reasonable probability that the outcome of the
proceedings would have been different. The software used also operated as a pen register and a trap
and trace, without a required prior court order, in violation of state and federal statutes.

C.      Trial counsel was ineffective by failing to object to the admission of Appellant's confession on the basis of the corpus delecti rule.

Since *Diodoro* held that "accessing **and viewing** child pornography over the internet constitutes "control" of such pornography under 18 Pa.C.S. § 6312(d), and there was no evidence that anyone viewed any of the files downloaded into Piasecki's computer, proof of the *corpus delecti* of the crime beyond a reasonable doubt was insufficient to permit the fact finder to consider the defendant's confession and should have been objected to.

7.  <u>**ARGUMENT FOR APPELLANT**</u>

   A.   **Appellant is entitled to review of the lower court's denial of Post Conviction Relief Act (PCRA) relief where he had not completed serving his sentence at the time of the trial court's opinion but had completed serving his sentence at time he filed the appeal of the denial of his PCRA petition.**

   42 Pa.C.S.A. § 9543 provides, regarding Post Conviction Relief Act (PCRA) relief, in

relevant part:

§ 9543. Eligibility for relief

   **(a) General rule.**--To be eligible for relief under this subchapter, the petitioner must **plead and prove** by a preponderance of the evidence all of the following:

   (1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

   (i) currently serving a sentence of imprisonment, probation or parole for the crime;

*      *      *

   (emphasis added).

   Two Pennsylvania cases that have discussed the effect of completion of the criminal sentence upon the availability of relief were cited by the Court below; *Commonwealth v. Ahlborn*, 548 Pa. 544, 548, 699 A.2d 718, 720 (1997), and *Commonwealth v. Matin*, 832 A.2d 1141, 1143 (Pa.Super.2003), appeal denied, 577 Pa. 678, 843 A.2d 1237 (2004).

18

In *Matin*, counsel was appointed for a PCRA petition but filed a "no-merit brief" after which the PCRA court dismissed the petition. Then after the Superior Court reversed and remanded the case, finding that one of Appellant's issues held arguable merit, the case was returned to the PCRA court for consideration of the issue, at which time Appellant's sentence for the conviction had expired. The PCRA court found that Appellant was no longer eligible for PCRA relief on any issue attacking the conviction and again dismissed his petition relying on the Supreme Court's decision in *Ahlborn*.

*Ahlborn* filed a PCRA petition while serving a sentence of imprisonment but was held ineligible for relief because, **prior to final adjudication of his petition**, he was released from custody. The Supreme Court noted the statute's requirement that a PCRA petitioner "plead and prove" that he "is currently serving a sentence...." and stated that "[t]he statute clearly contemplates that the petitioner will be serving a sentence at both the **pleading and proof stages** of the proceeding." That court arrived at its decision, it stated, because the language "serving a sentence at both the pleading and proof stages," is clear and unambiguous, and therefore, "it must be given effect in accordance with its plain and obvious meaning," citing *Commonwealth v. Corporan,* 531 Pa. 348, 351, 613 A.2d 530, 531 (1992); *Commonwealth v. Kriston,* 527 Pa. 90, 94, 588 A.2d 898, 899 (1991); *Commonwealth v. Bursick,* 526 Pa. 6, 10, 584 A.2d 291, 293 (1990); *Commonwealth v. Bell,* 512 Pa. 334, 339–40, 516 A.2d 1172, 1175 (1986), and the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b). *Commonwealth v. Ahlborn*, 548 Pa. 544, 547-48, 699 A.2d 718, 720 (1997). If the statute is, "given effect in accordance with its plain and obvious meaning," Piasecki **was** serving a sentence at both the pleading and proof stages of the proceeding, unlike *Matin* who was not in custody at the proof stage, and *Ahlborn* who was released prior to the adjudication. There was an

19

adjudication, pleading and proof while Piasecki was in custody. The Lower Court therefore had

jurisdiction to hear the case. The question for this Court is really whether there is a case or

controversy, i.e. whether the question is now moot because the Piasecki's sentence concluded **after**

the Lower Court's decision.

> It follows that *Carafas* and *Maleng* stand for the principle that
> the incarceration requirement of a jurisdictional statute must be
> determined independent of mootness. Similarly, our conclusion that
> the "currently serving" requirement of the PCRA is determined at the
> time of filing means only that the instant PCRA courts had
> jurisdiction over appellants' petitions. A subsequent determination of
> mootness does not divest the courts of jurisdiction, although the case
> may nevertheless be dismissed.
> Having clarified that jurisdiction and mootness are separate
> inquiries, and in determining jurisdiction over the petitions before us
> existed in the PCRA courts, we can proceed to determine if those
> petitions now are rendered moot. (citations omitted).

*Commonwealth v. Ahlborn*, 453 Pa. Super. 124, 137-38, 683 A.2d 632, 638-39 (1996) aff'd, 548 Pa.

544, 699 A.2d 718 (1997) and aff'd sub nom. *Commonwealth v. McGuire*, 548 Pa. 476, 698 A.2d 61

(1997).

Mootness was the basis of the Superior Court's opinions' and analyses in *Commonwealth v.*

*Ahlborn*, 453 Pa.Super. 124, 683 A.2d 632 (1996) (*en banc*), *aff'd*, 548 Pa. 544, 699 A.2d 718

(1997) affirmed by the Supreme Court on different grounds, *i.e.*, that "[t]he statute clearly

contemplates that the petitioner will be serving a sentence at both the pleading and proof stages of

the proceeding."

> It is axiomatic that an actual case or controversy must exist at
> all stages of appellate review. *DeFunis v. Odegaard*, 416 U.S. 312,
> 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).  Since the existence of an
> actual controversy is essential to appellate jurisdiction, if, pending an
> appeal, an event occurs which renders it **impossible for the appellate
> court to grant any relief**, the appeal will be dismissed.

*Commonwealth ex rel. Watson v. Montone,* 227 Pa.Super. 541, 323 A.2d 763 (1974).

>    The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way-changes in the facts or in the law-which allegedly deprived the litigant of the **necessary stake in the outcome**. The mootness doctrine requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." (emphasis added).

*Commonwealth v. Ahlborn*, 453 Pa. Super. 124, at 138, 683 A.2d 632, at 639 (1996).

In the case *sub judice*, however, the appellate court is not without the power to grant relief and Piasecki has a stake in the outcome because of that. This court can **reverse** the Lower Court's denial of the relief requested there, and **grant a new trial, or vacate the conviction**. *See, e.g., Commonwealth v. Grant,* in which that relief was granted: "For these reasons, the PCRA court erred in denying Grant's petition for relief. The order of the PCRA court dated April 4, 2008 is reversed. The judgment of sentence dated August 16, 2004 is vacated and a new trial is hereby awarded. Case remanded. Jurisdiction relinquished." *Grant*, 2010 PA Super 45, 992 A.2d 152, 162 (Pa. Super. Ct. 2010). *See also Commonwealth v. Young*, 2011 PA Super 277, 35 A.3d 54, 65 (Pa. Super. Ct. 2011) appeal denied, 616 Pa. 646, 48 A.3d 1249 (2012) ("Order affirmed in part; reversed in part. Conviction for receiving stolen property vacated. Judgment of sentence affirmed." This court could also consider the record adequate, on the question of the ineffectiveness of trial counsel, to grant a new trial on the basis of counsel's apparent ineffectiveness on the current record, because the petitioner must prove only that (1) his underlying claim has **arguable** merit, (2) the course chosen by counsel could have had **no reasonable** basis designed to serve the defendant's interests, and (3) the defendant was prejudiced by counsel's act or omission. When the appellant presents an ineffective-

assistance-of-counsel claim of arguable merit and there has been no evidentiary hearing in the trial court, the Supreme Court ordinarily remands to permit the parties to develop a record; however, where it is clear from the existing record that: (1) counsel was ineffective; or (2) the ineffectiveness claim is meritless, the court will rule accordingly without remanding. *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293 (1999).

The remedy of granting a new trial also finds support in *Commonwealth v. Hernandez*, 755 A.2d 1 (Pa. Super. Ct. 2000*) aff'd in part,* 572 Pa. 477, 817 A.2d 479 (2003) where, although finding that the lower court erred by denying appellant's petition for appeal nunc pro tunc the appellate court did not remand the case where doing so would work an injustice on the appellant whose claim would then be untimely under the Post Conviction Relief Act; instead, the appellate court examined the appellant's claim, since the record was adequate for review.

*Lee v. Stickman*, C.A.3 (Pa.) 2004, 357 F.3d 338, held that a **Petitioner's** appeal from the district court's dismissal of his petition for habeas corpus was not moot even though **petitioner** had **served** his **sentence**, where **petitioner** took all possible steps to have his claims promptly reviewed prior to his release. *Lee v. Stickman*, C.A.3 (Pa.) 2004, 357 F.3d 338. Piasecki's PCRA hearing concluded on April 16th, 2013. Eight days later, on April 24th, Defendant's Petition for Post-Conviction Relief was denied. Two days later his probationary sentence expired. Appellant filed a timely appeal to this Honorable Court on May 22, 2013, 28 days later. Piasecki should fall under the same exception to the mootness doctrine.

As stated in the dissent by Justice BLACK, Mr. Justice DOUGLAS, and Mr. Justice BRENNAN in *Parker v. Ellis*, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (U.S.Tex. May 16, 1960):

It is quite true that the statute provides that the writ of habeas corpus will not issue unless the applicant is 'in custody.' 28 U.S.C. s 2241(c), 28 U.S.C.A. s 2241(c). But the statute does not impose this same restriction upon the grant of relief. Rather, the federal courts are given a broad grant of authority to 'dispose of the matter as law and justice require.' 28 U.S.C. s 2243, 28 U.S.C.A. s 2243. In the case at bar, the 'in custody' prerequisite to issuance of the writ is no longer relevant, because the function of the writ-to provide and to facilitate inquiry into the validity of the applicant's claim-has already been fully served. 362 U.S. 574, 583.

Overruling *Parker,* Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554

(U.S.N.Y. May 20, 1968) also recognized:

...the statute does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted. It provides that '(t)he court shall * * * dispose of the matter as law and justice require.' 28 U.S.C. s 2243. The 1966 amendments to the habeas corpus statute seem specifically to contemplate the possibility of relief other than immediate release from physical custody. At one point, the new s 2244(b) (1964 ed., Supp. II), speaks in terms of 'release from custody or other remedy.' 391 U.S. at 240.

Likewise, the Pennsylvania PCRA Stature provides, under "Relief and order,"

(a) **General rule.**--If the court rules in favor of the petitioner, it shall order appropriate relief and issue supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence or other matters that are necessary and proper. 42 Pa. Cons. Stat. Ann. § 9546

Piasecki also has a stake in the outcome for the reasons stated in *Carafas:*

It is clear that petitioner's cause is not moot. In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror. Because of these 'disabilities or burdens (which) may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the

23

sentence imposed on him.' (citations and footnotes omitted) *Carafas v. LaVallee,* 391 U.S. 234, 238 (U.S.N.Y. May 20, 1968).

and as expressed in the dissenting views of Judges Del Sole, Cirillo and Cavanaugh in *Ahlborn* recognizing there are collateral consequences to a conviction which continue despite that fact that a defendant has completed serving the sentence imposed. The collateral consequences are particularly harsh under the facts of the case *sub judice* because with Piasecki's extreme mental disabilities outlined *supra*, he will not be able to understand nor follow the requirements of registration at 42 Pa.C.S. § 9199.16.  He will have difficulty finding employment to assist with maintaining himself and his son.  If he outlives his parents or has no one to help him, and runs afoul of the complex registration requirements, he will become subject to the draconian penalties of 18 Pa.C.S. § 4915.1 (felony of the second degree).

In the Superior Court, *Ahlborn* discussed the fact that Pennsylvania is the only jurisdiction, state or federal, which has expressly abrogated the doctrine of collateral consequences, and had legislated abrogation of the collateral consequences doctrine. That doctrine had been created by our Supreme Court as "an exception to the mootness doctrine, and provided that a collateral attack upon a conviction for which a sentence has been fully served is not moot where the petitioner can demonstrate that the conviction will affect a subsequent criminal prosecution." *Ahlborn*, 453 Pa. Super. 124, 129-38, 683 A.2d 632, 634-639 (1996) citing *Commonwealth v. Sheehan,* 446 Pa. 35, 285 A.2d 465 (1971).

The Constitution of the Commonwealth of Pennsylvania, Article 1, Sections 9, 11 and 14, and Pa. Const. art. V, § 9 ("There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an

24

administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law."), as well as the Fifth Amendment to the Constitution of the United States of America, require appellate review to be available under these circumstances because without the availability of appellate review due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution cannot be assured. *cf. Fay v. Noia,* 372 U.S. 391, 424, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) ("[C]onventional notions of finality in criminal litigation cannot be permitted to defeat the manifest federal policy that federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for plenary federal judicial review.").

> I cannot regard their PCRA petitions as "moot;" the potential for harm under the enhancing statutes [for multiple offenders] and the sentencing guidelines still exists. To cause these defendants to potentially suffer the heightened consequences on a subsequent conviction, based upon the present convictions which may have been reversed due to meritorious claims presented in their unreviewed PCRA petitions, is **against basic principles of justice and the rights conferred under our state and federal constitutions**.", President Judge Emeritus Cirillo, dissenting in *Commonwealth v. Ahlborn,* 453 Pa. Super. 124, 146, 683 A.2d 632, 643 (1996) (emphasis added).

**B.**   **Trial counsel was ineffective in failing to file and litigate a pre-trial motion to suppress the evidence derived from a search of Appellant's computer prior to obtaining a search warrant, where he had an expectation of privacy in its contents, and the intrusion violated the Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. Ann. § 5701 *et. seq* thus violating rights secured to him by the Constitution of the Commonwealth of Pennsylvania, Article 1, Sections 8 and 9, as well as the Constitution of the United States of America, Amendments Fourth and Fourteenth.**

Agent Coleman's report of what he found on the hard drive (exhibit D-4), shows that the initial intrusion **prior to the search warrant** bypassed the Piasecki computer's privacy settings of "not to share," as revealed in the "dot props file," which established an expectation of privacy in the very types of files downloaded by the use of EP2P and Netstat, and then used as probable cause for the search warrant used to seize the computer. This allowed Officer Cummins to hack into the Piasecki computer and view information not seen by the typical LimeWire user, inaccessible to the general public, and use the Piasecki computer's CPU to expose much private information.  The software used operated also as a pen register and a trap and trace, which require a prior court order.

Terms used in the wiretap act are defined in 18 Pa.C.S.A. § 5702. **Definitions:**

As used in this chapter, the following words and phrases shall have the meanings given to them in this section unless the context clearly indicates otherwise:

**"Aggrieved person." A person who was a party to any intercepted wire, electronic or oral communication or a person against whom the interception was directed.**

"Aural transfer." A transfer containing the human voice at any point between and including the point of origin and the point of reception.

26

"Communication common carrier." Any person engaged as a common carrier for hire, in intrastate, interstate or foreign communication by wire or radio or in intrastate, interstate or foreign radio transmission of energy; however, a person engaged in radio broadcasting shall not, while so engaged, be deemed a common carrier.

"Contents." As used with respect to any wire, electronic or oral communication, is any information concerning the substance, purport, or meaning of that communication.

"Court." The Superior Court. For the purposes of Subchapter C only, the term shall mean the court of common pleas.

"Electronic communication." Any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system, except:

(1) Deleted.
(2) Any wire or oral communication.
(3) Any communication made through a tone-only paging device.
(4) Any communication from a tracking device (as defined in this section).

"Electronic communication service." Any service which provides to users the ability to send or receive wire or electronic communications.

"Electronic communication system." Any wire, radio, electromagnetic, photo-optical or photoelectronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications.

"Electronic, mechanical or other device." Any device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication other than:

(1) Any telephone or telegraph instrument, equipment or facility, or any component thereof, furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary

27

course of its business, or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business, or being used by a communication common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties.

(2) A hearing aid or similar device being used to correct subnormal hearing to not better than normal.

(3) Equipment or devices used to conduct interceptions under section 5704(15) (relating to exceptions to prohibition of interception and disclosure of communications).

"Electronic storage."

(1) Any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof.

(2) Any storage of such a communication by an electronic communication service for purpose of backup protection of the communication.

"Home." The residence of a nonconsenting party to an interception, provided that access to the residence is not generally permitted to members of the public and the party has a reasonable expectation of privacy in the residence under the circumstances.

"In-progress trace." The determination of the origin of a telephonic communication to a known telephone during an interception.

"Intercept." Aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device. The term shall include the point at which the contents of the communication are monitored by investigative or law enforcement officers.

\* \* \*

**"Pen register." A device which is used to capture, record or decode electronic or other impulses which identify the numbers dialed or otherwise transmitted, with respect to wire or electronic communications, on the targeted telephone. The term includes a device which is used to record or decode electronic or other impulses which identify the existence of incoming and outgoing wire or electronic communications on the targeted telephone. The term does not include a device used by a provider or customer of a wire or electronic communication service for billing, or**

28

recording as an incident to billing, for communication service provided by the provider, or any device used by a provider, or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of business.

"Person." Any employee, or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation.

"Readily accessible to the general public." As used with respect to a radio communication, that such communication is not:

(1) scrambled or encrypted;
(2) transmitted using modulation techniques of which the essential parameters have been withheld from the public with the intention of preserving the privacy of the communication;
(3) carried on a subscriber or other signal subsidiary to a radio transmission;
(4) transmitted over a communication system provided by a common carrier, unless the communication is a tone-only paging system communication; or
(5) transmitted on frequencies allocated under 47 CFR Parts 25, 74D, E, F or 94, unless, in the case of a communication transmitted on a frequency allocated under Part 74 which is not exclusively allocated to broadcast auxiliary services, the communication is a two-way voice communication by radio.

"Remote computing service." The provision to the public of computer storage or processing services by means of an electronic communications system.

*   *   *

"Telecommunication identification interception device." Any equipment or device capable of intercepting any electronic communication which contains any electronic serial number, mobile identification number, personal identification number or other identification number assigned by a telecommunication service provider for activation or operation of a telecommunication device.

"Tracking device." An electronic or mechanical device which permits only the tracking of the movement of a person or object.

**"Trap and trace device." A device which captures the incoming electronic or other impulses which identify the originating**

29

> **number of an instrument or device from which a wire or electronic communication was transmitted.**
>
> "User." Any person or entity who:
>
> (1) uses an electronic communication service; and
> (2) is duly authorized by the provider of the service to engage in the use.
>
> "Wire communication." Any aural transfer made in whole or in part through the use of facilities for the transmission of communication by wire, cable or other like connection between the point of origin and the point of reception, including the use of such a connection in a switching station, furnished or operated by a telephone, telegraph or radio company for hire as a communication common carrier. The term includes any electronic storage of such communication.

Authorization of such an intrusion requires a specific procedure culminating in the order, which was not followed in this case 18 Pa.C.S.A. § 5771 and 5772. It involved the use of a trap and trace device.  The use of such a device also violates federal statutes regarding the use of the pen register which, unlike the Pennsylvania law, does include the word "telephone." No person may install or use a pen register or a trap and trace device or a telecommunication identification interception device without first obtaining a court order. 18 USC 3121.

> the term "pen register" means a device or process which **records or decodes dialing, routing, addressing, or signaling information** transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication, but such term does not include any device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider or any device or process used by a provider or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of its business; 18 USC 3127

Disclosure of the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication is a felony. 18 Pa.C.S.A. § 5703. Further, the use of trap and trace devices are not permitted without a court order and violation is a misdemeanor of the third degree. 18 Pa.C.S.A. § 5771. Suppression on the basis of the unlawful conduct is controlled by 18 Pa.C.S.A. § 5721.1, and should have been applied for by trial counsel, as none of the exceptions to prohibition of interception and disclosure of communication sets forth in 18 Pa. Cons. Stat. Ann. § 5704 exist.

To be eligible for relief under the Post Conviction Relief Act (PCRA) for ineffective assistance of counsel, the petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Guess*, 2012 PA Super 196, 53 A.3d 895 (2012).

Petitioner's underlying claim has arguable merit regarding failure to move to suppress the initial intrusion into the Piasecki computer because of the testimony given by both experts during the PCRA hearing. It is arguable that the instruments and software used by Cummins were pen registers or trap and traces  in that they are a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, and capture the incoming electronic or other impulses which identify the originating number of an instrument or device from which a wire or electronic communication was transmitted, *i.e.* the GUID and IP addresses of the Piasecki computer. In addition, Piasecki's expectation of privacy was violated without the required court order, even if

31

these were not pen registers or trap and trace devices because he qualifies as an aggrieved person whose electronic communication was the subject of interception without a court order.  The course chosen by counsel not to move to suppress the results of the initial intrusion, which resulted in the issuance of the search warrant could have had no reasonable basis designed to serve the his interests, since it would have arguably resulted in suppression of the seized evidence from the computer, and there is a reasonable probability since it would have arguably resulted in suppression of the seized evidence from the computer of a different outcome of the proceedings.

C.      Trial counsel was ineffective by failing to object to the admission of Appellant's confession on the basis of the corpus delecti rule.

*Commonwealth v. Diodoro*, 601 Pa. 6, 970 A.2d 1100, 1108 (2009), cert. denied, 130 S. Ct. 200, 175 L. Ed. 2d 127 (2009) held that "accessing **and viewing** child pornography over the internet constitutes "control" of such pornography under 18 Pa.C.S. § 6312(d)."

> (b) Photographing, videotaping, depicting on computer or filming sexual acts.--Any person who causes or knowingly permits a child under the age of 18 years to engage in a prohibited sexual act or in the simulation of such act is guilty of a felony of the second degree if such person knows, has reason to know or intends that such act may be photographed, videotaped, depicted on computer or filmed. Any person who knowingly photographs, videotapes, depicts on computer or films a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such an act is guilty of a felony of the second degree.
>
> (c) Dissemination of photographs, videotapes, computer depictions and films.--
>
> (1) Any person who knowingly sells, distributes, delivers, disseminates, transfers, displays or exhibits to others, or who possesses for the purpose of sale, distribution, delivery, dissemination, transfer, display or exhibition to others, any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.
>
> (2) A first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree.

**(d) Child pornography.--**

(1) Any person who **intentionally views** or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

(2) A first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree.

**(e) Evidence of age.--**In the event a person involved in a prohibited sexual act is alleged to be a child under the age of 18 years, competent expert testimony shall be sufficient to establish the age of said person.

**(e.1) Mistake as to age.--**Under subsection (b) only, it is no defense that the defendant did not know the age of the child. Neither a misrepresentation of age by the child nor a bona fide belief that the person is over the specified age shall be a defense.

**(f) Exceptions.--**This section does not apply to any material that is viewed, possessed, controlled, brought or caused to be brought into this Commonwealth, or presented for a bona fide educational, scientific, governmental or judicial purpose.

**(f.1) Criminal action.--**

(1) A district attorney shall have the authority to investigate and to institute criminal proceedings for any violation of this section.

(2) In addition to the authority conferred upon the Attorney General by the act of October 15, 1980 (P.L. 950, No. 164),[1] known as the Commonwealth Attorneys Act, the Attorney General shall have the authority to investigate and to institute criminal proceedings for any violation of this section or any series of violations of this section

34

involving more than one county of this Commonwealth or involving any county of this Commonwealth and another state. No person charged with a violation of this section by the Attorney General shall have standing to challenge the authority of the Attorney General to investigate or prosecute the case, and, if any such challenge is made, the challenge shall be dismissed and no relief shall be available in the courts of this Commonwealth to the person making the challenge.

**(g) Definitions.**--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Intentionally views." The deliberate, purposeful, voluntary viewing of material depicting a child under 18 years of age engaging in a prohibited sexual act or in the simulation of such act. The term shall not include the accidental or inadvertent viewing of such material.**

**"Prohibited sexual act."** Sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction.

18 Pa.C.S.A. § 6312 (emphasis added).

In Pennsylvania, under the corpus delecti rule, extrajudicial statements of the defendant may not be admitted into evidence unless corroborated by independent evidence that the crime actually occurred. *Commonwealth v. Fears*, 575 Pa. 281, 836 A.2d 52 (2003), cert. denied, 545 U.S. 1141, 125 S. Ct. 2956, 162 L.Ed. 2d 891 (2005).

In other words, the extra-judicial admissions or confessions of an accused are sufficient to convict if the corpus delecti has been established by independent proof before the extra-judicial statement of the accused is entered into evidence. The corpus delecti rule is a rule of evidence which places the burden upon the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted.

35

*Commonwealth v. Verticelli*, 550 Pa. 435, 706 A.2d 820 (1998) (abrogated on other grounds by, *Commonwealth v. Taylor*, 574 Pa. 390, 831 A.2d 587 (2003)).

The crucial determination in applying the corpus delecti rule is whether, at the close of the case, the proof of corpus delecti is sufficient to permit the fact finder to consider the defendant's admission or confession. *Commonwealth v. Persichini*, 444 Pa. Super. 110, 663 A.2d 699 (1995), opinion aff'd, 558 Pa. 449, 737 A.2d 1208 (1999). After a confession has been admitted, the Commonwealth must prove the *corpus delecti* of the crime, beyond a reasonable doubt. *Commonwealth v. Ahlborn*, 657 A.2d 518 (Pa. Super., 1995) reargument denied, (May 16, 1995); See also *Commonwealth v. Chambliss*, 847 A.2d 115 (Pa. Super., 2004).

To be eligible for relief under the Post Conviction Relief Act (PCRA) for ineffective assistance of counsel, the petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Guess*, 2012 PA Super 196, 53 A.3d 895 (2012).

Appellant's underlying claim has arguable merit since an objection based on the corpus delecti rule could have resulted in no admissible confession, and an inability to prove that any of the files were viewed or intentionally viewed, as testified to by both the prosecution and defense expert witnesses. The course chosen by counsel could have had no reasonable strategic basis designed to serve the defendant's interests, since, he agreed that he could have stipulated, for the purpose of the trial to all of the evidence but the confession coming into evidence, and preserved the corpus delecti objection (R. 760a). The defendant was prejudiced by a reasonable probability that the outcome of the proceedings would have been different since without the confession the prosecution would have

36

had no evidence that anyone had controlled, e.g. viewed, the pornography on his computer, nor that

he had done so, the second prong required by *Diodoro*.

8.   **CONCLUSION AND RELIEF SOUGHT**

WHEREFORE, Appellant requests this Honorable Court to grant a new trial. *See,*

*e.g., Commonwealth v. Grant* and   *Commonwealth v. Young, supra.*

Respectfully submitted,

RICHARD R. FINK, ESQUIRE
174 Middletown Blvd., Suite C300
Langhorne, PA 19047
(215) 741-1212
ATTORNEY FOR APPELLANT

38

Richard R. Fink, Esquire
Fink, Fink and Associates
Attorney I.D. # 16211
The Lofts at Oxford Valley
174 Middletown Blvd., Ste. C300
Langhorne, PA 19047
(215) 741-1212

## IN THE SUPERIOR COURT OF PENNSYLVANIA

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : 1482 EDA 2013 |
| | : |
| vs. | : |
| | : |
| **JASON PIASECKI** | : ATTORNEY I.D. #16211 |

### PROOF OF SERVICE

I RICHARD R. FINK, ESQUIRE, attorney for the Defendant, JASON PIASECKI, hereby

verify and certify that copies of the Appellant's Brief have been served on the following and by the

manner indicated below, which service satisfies the requirements of Pa.R.A.P. 121:

**<u>VIA FIRST CLASS MAIL</u>:**

1.     Honorable Rea B. Boylan
        Bucks County Courthouse
        Doylestown, PA 18901

2.     Karen Diaz, ADA
        Bucks County Courthouse
        Doylestown, PA 18901

3.     Pennsylvania Superior Court
        530 Walnut Street, Suite 315
        Philadelphia, PA 19106

Date: 10/16/13

RICHARD R. FINK, ESQUIRE

39

**CERTIFICATE OF SERVICE**

I, Karen A. Diaz, Esquire, Deputy District Attorney of Bucks County, do hereby swear and affirm that on the 9th day of March, 2015, a true and correct copy of Respondent's Supplement is served upon the following in the manner indicated:

**VIA ELECTRONIC FILING:**

Clerk of the District Court
United States District Court
  for the Eastern District of Pennsylvania
2609 United States Courthouse
601 Market Street
Philadelphia, PA  19106

**VIA FIRST CLASS MAIL:**

The Honorable Marilyn Heffley
U.S. Magistrate Judge
United States District Court
  for the Eastern District of Pennsylvania
4001 United States Courthouse
601 Market Street
Philadelphia, PA  19106

Peter Goldberger, Esquire
50 Rittenhouse Place
Ardmore, PA 19003

Respectfully submitted,

/s/ Karen A. Diaz

kad9038

Karen A. Diaz, Deputy District Attorney
Attorney for the Commonwealth/Respondent
Attorney I.D. 56067
Office of the District Attorney
Bucks County Justice Center – 2nd Floor
100 N. Main Street
Doylestown, PA18901
#(215) 348-6344